**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JEFFREY PODELL,
                    Plaintiff

VS.

LLOYD J. AUSTIN III,
In his official capacity as Secretary of the
United States Department of Defense, UNITED
STATES DEPARTMENT OF DEFENSE;

FRANK D. WHITWORTH III,                          **CASE NO:**
In his official capacity as Director of the
National Geospatial Intelligence Agency, NATIONAL      **COMPLAINT FILED:**
GEOSPATIAL INTELLIGENCE AGENCY;
                                                 **JUDGE:**
FRANK KENNEY,
In his official capacity as Chief of Police,     **JURY TRIAL DEMANDED**
National Geospatial Intelligence Agency
Police, NATIONAL GEOSPATIAL INTELLIGENCE
AGENCY POLICE;

RICHARD WEISS,
In his official capacity as Assistant Chief
Of Police, National Geospatial Intelligence
Agency Police, NATIONAL GEOSPATIAL
INTELLIGENCE AGENCY POLICE;

JASON TINNIN,
In his official capacity as Major of Police,
National Geospatial Intelligence Agency
Police;

WESLEY LEE JORDAN,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

1

MARCUS DWAYNE JACKSON,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

JESSE MCNEIL,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

MARCEL YOUNG,
In his official capacity as Lieutenant of Police,
National Geospatial Intelligence Agency
Police;

LARENCE DUBLIN,
In his official capacity as Corporal of Police,
National Geospatial Intelligence Agency
Police;

Defendants

# COMPLAINT
## INTRODUCTION

This complaint involves employment discrimination, retaliation, equal protection, and due process violations based on membership in the legally protected class of a practitioner of the Jewish religion. Defendants have engaged in a pattern and practice of direct and/or constructive discrimination and retaliation against Plaintiff when he, an otherwise qualified applicant, on multiple occasions, sought a reasonable accommodation for an alternative testing date in order to not violate his sincerely held religious beliefs. At no time did Defendants dialogue, interact and offer Plaintiff a mutually agreeable reasonable accommodation of Plaintiff's religious requirements. Instead, Defendants abdicated their responsibilities to obey and enforce the laws and

regulations for the prevention of discrimination and attempted to blame each other for their failures. Key Defendants acknowledged that they never grant reasonable accommodations.  In addition to damages, Plaintiff seeks to change the way Defendants function in connection with reasonable accommodation for religious needs through Declaratory and Injunctive Relief.

## PARTIES

1.      Plaintiff Jeffrey Podell ("Plaintiff" or "Podell"), is an adult individual currently residing in the Eastern District of Pennsylvania and a practitioner of the Jewish religion.

2.      Defendant Lloyd J. Austin, III ("Austin") is an adult male serving as Secretary of the United States Department of Defense, as defined by 10 U.S.C. § 113. He is sued in his official capacity. He is responsible for the administration and implementation of policy within the United States Department of Defense including but not limited to enforcing Title VII of the Civil Rights Act of 1964 and the enforcement of Department of Defense regulations and policies concerning Equal Employment Opportunity. He is also responsible for issuance of directives and memoranda to subordinate personnel in all areas including but not limited to, Equal Employment Opportunity and the advancement of the Administration's directives on diversity, equity, and inclusion.

3.      Defendant Frank D. Whitworth, III ("Whitworth") is the Director of the National Geospatial Intelligence Agency. He is sued in his official capacity because he is responsible for the administration and implementation of policy within the National Geospatial Intelligence Agency including but not limited to enforcing Title VII of the Civil Rights Act of 1964 and the enforcement of laws, regulations, and Department of Defense policies concerning Equal Employment Opportunity. He is also responsible for issuance of directives and memoranda to subordinate personnel in all areas including but not limited to Equal Employment Opportunity and the Administration's directives on diversity, equity, and inclusion.

4.    Defendant Frank Kenney ("Kenney") is the agency head of the National Geospatial Intelligence Agency Police. He is sued in their official capacity because he is responsible for the administration and implementation of policy within the National Geospatial Intelligence Agency Police including but not limited to enforcing Title VII of the Civil Rights Act of 1964 and the enforcement of laws, regulations, and Department of Defense policies concerning Equal Employment Opportunity. He is also responsible for issuance of directives and memoranda to subordinate personnel in all areas including but not limited to Equal Employment Opportunity and the Administration's directives on diversity, equity, and inclusion.

5.    Defendant United States Department of Defense ("DOD") is a component of the Executive Branch of the United States Government as defined by 10 U.S.C. § 111, et seq., and is therefore subject to the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Defendant DOD is the parent agency of Defendants National Geospatial Intelligence Agency and National Geospatial Intelligence Agency Police.

6.    Defendant National Geospatial Intelligence Agency ("NGA") is an agency of Defendant DOD established by the National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136 (2003), and is therefore subject to the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

7.    Defendant National Geospatial Intelligence Agency Police ("NGA Police") is an agency of Defendants DOD and NGA, and is therefore subject to the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

8.    Defendant Richard Weiss ("Weiss") is sued in his official capacity as a management official of Defendant NGA Police, involved in the decision to deny Plaintiff's requests for religious accommodation in the form of alternative testing dates.

9.     Defendant Jason Tinnin ("Tinnin") is a management official of Defendant NGA Police, who was the first line supervisor to Defendant Jordan. He is sued in his official capacity.

10.     Defendant Wesley Lee Jordan ("Jordan") is a management official of Defendant NGA Police, and is sued in his official capacity as a hiring manager in charge of the hiring process for the vacancies in St. Louis, Missouri.

11.     Defendant Jesse McNeill ("McNeill") is a management official of Defendant NGA Police, and is sued in his official capacity as a hiring official involved in the hiring process for the vacancies in St. Louis, Missouri.

12.     Defendant. Marcus Dwayne Jackson ("Jackson") is a management official of Defendant NGA Police, and is sued in his official capacity as a hiring manager for the vacancies in Springfield, Virginia.

13.     Defendant Marcel Young ("Young") is a management official of Defendant NGA Police, and is sued in his official capacity as a management official involved in the hiring process.

14.     Defendant Larence Dublin ("Dublin") is sued in his official capacity as an official of Defendant NGA Police, overseeing the selection process for Defendant NGA Police.

## JURISDICTION AND VENUE

15.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. as amended, and in particular, 42 U.S.C. §2000e(j), requiring religious accommodation to be afforded; the Religious Freedom Restoration Act, 42 U.S.C. §§2000bb-2000bb-4, and any other Act affording the right to pursue one's religious practice and to be accommodated with respect thereto.

16.     This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1343 because it involves a federal question and civil action arising under the laws of the United States,

to recover damages, and to secure equitable or other relief under Acts of Congress for the protection of civil rights.

17.    This Court has jurisdiction under 28 U.S.C. § 1361 to compel an officer of the United States or any federal agency to perform his or her duty owed to Plaintiff.

18.    Venue is proper in the Eastern District of Pennsylvania according to 28 U.S.C. § 1391 because Defendants are agencies, officers, and employees of the United States and a substantial portion of the events or omissions occurred in the Eastern District of Pennsylvania. Plaintiff resides within the Eastern District of Pennsylvania.

## FACTS COMMON TO ALL COUNTS

### BACKGROUND

19.    On January 15, 2021, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a guidance with its official positions on the prevention of religious discrimination and compliance with the governing laws and regulations. See Office of Legal Counsel. (2021). *Compliance Manual on Religious Discrimination* (OLC Control No. EEOC-CVG-2021-3). U.S. Equal    Employment    Opportunity    Commission,    Office    of    Legal    Counsel. https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#h_984461328691610748665504.

20.    Defendants knew or should have known of the aforementioned guidance and been briefed on it during required anti-discrimination training. Defendants are entrusted with the responsibility to comply with the same.

21.    On January 20, 2021, the President signed Executive Order 13985 entitled: "Advancing Racial Equity and Support for Underserved Communities Through the Federal Government" and made it the official decision of the Administration for federal agencies to

conduct thorough audits and work to redress inequities in government programs that create barriers to equal opportunity. See Exec. Order No. 13985, 86 Fed. Reg. 7009 (January 20, 2021).

22.    By Presidential declaration it was stated:

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered:

Section 1. *Policy*. Equal opportunity is the bedrock of American democracy, and our diversity is one of our country's greatest strengths. But for too many, the American Dream remains out of reach. **Entrenched disparities in our laws and public policies, and in our public and private institutions, have often denied that equal opportunity to individuals and communities.** Our country faces converging economic, health, and climate crises that have exposed and exacerbated inequities, while a historic movement for justice has highlighted the unbearable human costs of systemic racism. Our Nation deserves an ambitious whole-of-government equity agenda that matches the scale of the opportunities and challenges that we face.

**It is therefore the policy of my Administration that the Federal Government should pursue a comprehensive approach to advancing equity for all,** including people of color and others who have been historically underserved, marginalized, and adversely affected by persistent poverty and inequality. **Affirmatively advancing equity, civil rights, racial justice, and equal opportunity is the responsibility of the whole of our Government. Because advancing equity requires a systematic approach to embedding fairness in decision-making processes, executive departments and agencies (agencies) must recognize and work to redress inequities in their policies and programs that serve as barriers to equal opportunity.**

**By advancing equity across the Federal Government, we can create opportunities for the improvement of communities that have been historically underserved, which benefits everyone.** For example, an analysis shows that closing racial gaps in wages, housing credit, lending opportunities, and access to higher education would amount to an additional $5 trillion in gross domestic product in the American economy over the next 5 years. The Federal Government's goal in advancing equity is to provide everyone with the opportunity to reach their full potential. Consistent with these aims, each agency must assess whether, and to what extent, its programs and policies perpetuate systemic barriers to opportunities and benefits for people of color and other underserved groups. Such assessments will

better equip agencies to develop policies and programs that deliver resources and benefits equitably to all.

[Emphasis added]

23.     It is the official policy of the Administration that all Executive Branch agencies and employees, including Defendants, are to affirmatively advance civil rights and equal opportunity for members of religious minorities by analyzing their programs and policies and working to redress the inequities that are barriers to equal opportunity.

24.     Defendants knew or should have known of this Executive Order and its contents via an internal communication, briefing, or training course.

25.     As a Jew, Plaintiff is a member of a religious minority that has suffered barriers, burdens, and incidents of discrimination throughout history and who as explained below, has individually suffered discrimination and barriers to employment based on his sincerely held religious beliefs.

26.     On February 9, 2022, Defendant Austin's senior advisor in charge of human capital, diversity, equity and inclusion spoke of the necessity to recruit, train, and retain members of minority groups to retain a competitive edge as an agency and an employer. See Garamone, J. (2022, February 9). *Diversity, Equity, Inclusion Are Necessities in U.S. Military*. U.S. Department of Defense, DOD News. https://www.defense.gov/News/News-Stories/Article/Article/2929658/diversity-equity-inclusion-are-necessities-in-us-military/. Defendants knew or should have known of this on the record policy position of Defendant DOD.

27.     Defendants knew or should have known that workplace anti-discrimination laws, regulations, policies, and mandates are mission critical and an essential regulatory compliance obligation.

## SPECIFIC FACTS

28.    On April 23, 2021, Plaintiff applied for four Police Officer positions with Defendant National Geospatial Intelligence Agency (NGA) pursuant to the vacancy announcements available for the Springfield, Virginia and St. Louis, Missouri locations via the Intelligence Community's online careers portal.

29.    On June 9, 2021, Plaintiff received an email from Defendant NGA via Defendant Wesley Lee Jordan ("Jordan") inviting Plaintiff to complete the first phase of pre-employment processing.

30.    On June 16, 2021, Plaintiff replied in an email to Defendants Jordan and Jesse McNeill ("McNeill") that he could not attend the pre-employment processing event because the event was scheduled to take place on a Saturday.

31.    Plaintiff indicated he was unable to participate on Saturday because he is a Sabbath observant Jew and inquired about the possibility of alternate testing dates and times to accommodate his religious obligations.

32.    On June 20, 2021, Plaintiff received an email from Defendant Jordan of Defendant NGA stating that there are no alternative testing dates for that phase of the hiring process and invited Plaintiff to reapply in a number of months via the USAJobs.gov website.

33.    On June 28, 2021, Plaintiff received an email from Defendant NGA via the email address ngapolicesponsorship@nga.mil inviting him to participate in the first phase of pre-employment processing for Defendant NGA's Police Officer position located in Springfield Virginia on July 17, 2021, which was a Saturday and Plaintiff was unable to attend because it would have conflicted with his religious beliefs as a Sabbath observant Jew.

34.     On July 11, 2021, Plaintiff replied to the aforementioned email described in this complaint from ngapolicesponsorship@nga.mil indicating he was unable to attend the pre-employment processing event because it conflicted with Plaintiff's observance of the Jewish Sabbath.

35.     On July 14, 2021, Plaintiff received a reply email from Defendant NGA via the email address ngapolicesponsorship@nga.mil indicating that Defendant NGA and its child agency the NGA Police only have available dates on Saturdays and they would consult their Human Resources (HR) apparatus about alternative testing dates while still reiterating its invitation to Plaintiff to come to Springfield, Virginia to test on July 17, 2021, which as Plaintiff already indicated via email, was on the Jewish Sabbath.  Plaintiff never received any follow up or feedback from Defendant Jackson or any other personnel from Defendant NGA about alternative testing accommodations for Plaintiff's religious beliefs.

36.     On August 20, 2021, Defendant NGA sent an email via its address ngapolicesponsorship@nga.mil to Plaintiff inviting him to participate in the same type of pre-employment processing event on September 18, 2021 in Springfield, Virginia even though Defendant already knew that Plaintiff is a Sabbath observant Jew and could not make it on that day. Defendant NGA was already on notice with respect to Plaintiff's religious requirements as a result of prior emails.

37.     On August 20, 2021, Plaintiff replied to the email from Defendant NGA's email address ngapolicesponsorship@nga.mil indicating that he was unable to make it to the event because it took place during the Jewish Sabbath. It was explicitly reiterated that Plaintiff is a Sabbath observant Jew, and requested an alternate testing date that did not conflict with the Sabbath nor the Jewish holidays.

38.     On September 9, 2021, Plaintiff received an email from Defendant NGA via ngapolicesponsorship@nga.mil indicating that Defendant was only doing testing for the Police Officer position Saturdays in 2021 and wished Plaintiff luck in his future endeavors. This was yet again a dismissal of Plaintiff's numerous requests for reasonable accommodation.

39.     On September 28, 2021, Plaintiff received emails from Defendant NGA via the address ngapolicesponsorship@nga.mil about the two Police Officer positions he applied to in Springfield, Virginia. The emails indicated that Plaintiff's application was reviewed, he was not selected for any of the positions, and due to the volume of email traffic, Defendant could not go into further detail about the reasons for non-selection.

40.     On October 4, 2021, at approximately 12:49 PM EST, Plaintiff called Defendant NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity on the telephone number advertised publicly, to wit; 866-803-7489 via his personal cell phone to try to speak with an EEO Counselor employed by Defendant NGA but could only leave a voicemail because nobody answered the phone line. To date, Plaintiff never received a callback from said voicemail.

41.     On October 8, 2021, at approximately 2:15 PM EST, Plaintiff called Defendant NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity on the telephone number advertised publicly, to wit; 866-803-7489 via his personal cell phone to try to speak with an EEO Counselor employed by Defendant NGA but could only leave a voicemail because nobody answered the phone line. To date, Plaintiff never received a callback from said voicemail.

42.     On or about October 12, 2021, Plaintiff sent a written complaint to Defendant NGA. In this letter, Plaintiff provided a chronology of events leading up to initiating the complaint process, examples of how his religious beliefs were accommodated in the past, and examples of how other government employers have accommodated requests for alternative scheduling based

on an applicant's/employee's religious beliefs to show how Plaintiff's requested accommodations were reasonable and not an undue hardship for Defendants.

43.    On October 26, 2021, Mr. David Coleman ("Mr. Coleman"), an EEO Intake Specialist of Defendant NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity had a teleconference to discuss the EEO process with Plaintiff and to have Plaintiff sign documents to initiate the informal resolution process.

44.    On October 26, 2021, Plaintiff elected to pursue the informal complaint process while preserving his rights to file a formal complaint, and submitted the paperwork sent to him by Mr. Coleman.

45.    On or about November 4, 2021, Plaintiff's complaint was assigned to Ms. Kelly K. Thomas ("Ms. Thomas") of Defendant NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity.

46.    During the early part of the complaint process, a representative of Defendant NGA stated that in the content of Plaintiff's complaint, there was evidence of obvious discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964, as amended.

47.    On November 19, 2021, Defendant Jordan was interviewed by Mr. Coleman. During the interview, Jordan admitted that he did not consult with anyone at Defendant NGA about religious accommodations. Defendant Jordan also reiterated his denial of Plaintiff's request for reasonable accommodation for the St. Louis, Missouri positions.

48.    On November 29, 2021, Defendant Tinnin was interviewed by Mr. Coleman as part of the informal complaint process. During this interview, Tinnin stated he was not in charge of the hiring process for the St. Louis, Missouri vacancies but instead delegated those responsibilities to Defendant Jordan. Tinnin stated his belief that Plaintiff and others similarly situated have no rights

to accommodation of religious beliefs due to the 24/7 nature of the agency. He did not ask whether another testing date was available to accommodate the religious beliefs of applicants such as Plaintiff.

49.    On or about December 1, 2021, Defendant Jackson was interviewed by Mr. Coleman as part of the informal complaint process. During the interview, Defendant Jackson discussed that he was aware of the religious accommodation process for employees but not aware of the religious accommodation process for applicants, either he or someone else wrote the emails from the NGA Police Sponsorship email account and he does not recall his involvement with that email account, did not recall speaking with Defendant NGA's HR apparatus about Plaintiff's request for religious accommodation. He acknowledged creating the perception that Plaintiff was unwelcome as an applicant or employee due to applicant's religious beliefs.

50.    During the interview, Defendant Jackson discussed how events were always done on Saturdays in his tenure as a hiring process manager and that non-police officer personnel were also available for the interview portion of the hiring process if necessary.

51.    Upon information and belief Defendant Jackson stated that if hired, Plaintiff could be placed on a shift that involved a Monday through Friday work schedule called "Echo shift."

52.    On or about December 6, 2021, Mr. Mark Jackowski ("Jackowski"), the Reasonable Accommodation Program Manager for Defendant NGA was interviewed by Mr. Coleman as part of the informal complaint process. During the interview, Mr. Jackowski stated that if the reasonable accommodation does not pose an undue hardship on the agency, they are required to grant it as requested. Moreover, Mr. Jackowski discussed the religious accommodation request process for employees and that the burden is on the recruitment staff to handle requests from applicants for reasonable accommodations.

53.     On January 7, 2022, Plaintiff was notified via email of his right to file a formal complaint by Ms. Thomas.

54.     On January 10, 2022, Plaintiff timely filed a formal complaint with Defendant NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity.

55.     In the formal complaint, Plaintiff recounted the events leading up to the filing of the formal complaint and articulated proof of how he holds sincere religious beliefs of the Jewish faith. Examples included in the complaint were accommodations made for Plaintiff by other government agencies.

56.     On or about March 4, 2022, Ms. Thomas emailed Ms. Erin Mays ("Mays") of Defendant NGA to ask for a breakdown of Workforce Profiles for subordinates of certain employees.

57.     On March 8, 2022, Ms. Mays replied via email that Defendants do not maintain data on religion of employees but can furnish other needed data.

58.     On March 14, 2022, Defendant Jackson emailed Ms. Thomas in response to an initial email from Ms. Thomas on or about March 4, 2022 and a follow up email on or about March 14, 2022 and indicated that there were no religious accommodation requests made during the hiring cycles from September 2019-September 2021. This statement is contradicted by the emails submitted into the record and sent by Plaintiff requesting an accommodation due to his sincerely held religious beliefs.

59.     On March 28, 2022, Plaintiff submitted his answers to the interrogatories requested by the investigator, Ms. Dinah Sepulveda ("Sepulveda"). As to question 8 of the interrogatories, Plaintiff indicated that he required the religious accommodation for the alternative testing date because he is a Sabbath observant Jew and as part of those religious obligations, he was not

permitted to perform work such as operating a motor vehicle, handling money, and writing. Moreover, Plaintiff indicated that he could complete the requirements on an alternate day in order to not violate his sincerely held religious beliefs. In addition, as to the July 17, 2021, testing date, Plaintiff was not have been able to attend on that particular Sunday due to the religious fast day of Tisha B'Av.

60.    Plaintiff also discussed the events and referred to previously submitted email communications with various defendants in this matter. Moreover, he articulated how through acts by commission and omission, he was made to feel unwelcome as an applicant due to his sincerely held religious beliefs, his requests for religious accommodation were denied in writing.  No effort was made to accommodate those religious beliefs including the failure on the part of at least one of the defendants to follow up with the HR apparatus of Defendant NGA as promised in an email to Plaintiff.

61.    In the interrogatories, Plaintiff also submitted a supplemental sheet due to the need to give lengthy explanations to certain questions. More specifically: 1) Plaintiff was explicit about his religious needs; 2) Plaintiff articulated that upon information and belief other phases of processing such as background investigation, polygraph examination, security clearance interview, and new hire orientation took place during the week; 3) By Defendant NGA Police's own admission, they are a 24/7/365 organization; 4) Plaintiff provided examples that show his accommodations which he requested were reasonable and already practiced by other government employers including law enforcement agencies. See e.g., Bureau of Examinations. (2019). *Notice of Examination: Police Officer* (Exam No. 0320). City of New York, Department of Citywide Administrative                                                                                     Services. https://www1.nyc.gov/assets/dcas/downloads/pdf/noes/202000320000.pdf;    Department    of

Citywide Administrative Services. (2021). *Reasonable Accommodation Procedural Guidelines*. City of New York, Department of Citywide Administrative Services. https://www1.nyc.gov/assets/dcas/downloads/pdf/agencies/reasonable_accommodation_procedural_guidelines.pdf; and Governor's Office of Employee Relations. (2020). *Procedures for Implementing Reasonable Accommodation of Religious Observance or Practices for Applicants and Employees*. State of New York, Governor's Office of Employee Relations. https://goer.ny.gov/system/files/documents/2020/10/reasonableaccommodationreligion.pdf; and 5) Plaintiff articulated that he worked with his recent public and private sector employers to accommodate his religious needs.

62.    On or about March 30, 2022, Defendant Jackson submitted a reply to Plaintiff's interrogatories.

63.    In these written interrogatories; Defendant Jackson admitted to being aware of Plaintiff's request for an accommodation based on Plaintiff's religious beliefs as of July 11, 2021 via Plaintiff's email sent on that date.

64.    When asked about his involvement in the alleged acts of discrimination against Plaintiff, Defendant Jackson wrote the following; 1) That he spoke with Defendant Dublin about how to handle Plaintiff's request; 2) Defendant Jackson admitted that he failed to follow up with Defendant NGA's Human Resources apparatus as promised to Plaintiff in a reply email to Plaintiff's request for religious accommodation; 3) Defendant Jackson spoke with Defendant Weiss for advice on how to handle the request whom Defendant Jackson allegedly said to deny Plaintiff's request because of the alleged need to pay overtime for an alternate testing date and inconvenience to other applicants.

65.     When asked in the interrogatories about direct information to support/refute the claim that Plaintiff's request would cause undue hardship to Defendant NGA, Defendant Jackson wrote that in his opinion, Plaintiff's request would not cause undue hardship to the agency and that if hired, Plaintiff could be placed on a shift with a Monday through Friday work schedule with no holidays called "Echo shift."

66.     When asked about whether he reached out to Defendant NGA's Human Resources apparatus, Defendant Jackson admitted that he did not reach out to them about Plaintiff's request for religious accommodations in the hiring process.

67.     When asked if he had ever granted a request for accommodation based on religious beliefs, Defendant Jackson replied in the negative.

68.     When asked about his familiarity with Defendant NGA's policies about religious accommodations, Defendant Jackson denied that he was familiar with the policies.

69.     When asked if he complied with controlling policies/regulations governing religious accommodations when responding to Plaintiff's request, Defendant Jackson admitted that he should have contacted "HD," which upon information and belief is Defendant NGA's Human Resources apparatus.

70.     When asked if Plaintiff's inability to attend the screening process on a Saturday would automatically disqualify Plaintiff from further consideration, Defendant Jackson responded that such a failure would remove Plaintiff from further consideration.

71.     When asked if he was aware of Defendant NGA Police's policies designed to prevent discrimination, harassment, and reprisal at the time the alleged discriminatory incidents occurred, Defendant Jackson wrote he was unaware of the policies on religious accommodations.

72.     When asked about methods of publication of the aforementioned anti-discrimination policies, Defendant Jackson wrote that he believed the policies were posted on the website for HD.

73.     When asked about the circumstances surrounding receipt of training about Equal Employment Opportunity/prevention of discrimination, harassment, and reprisal, Defendant Jackson wrote that he took a refresher course in March 2022 but had not completed any training related to those areas since 2016.

74.     When asked if Plaintiff was provided with training in these subject areas, Defendant Jackson wrote he did not know.

75.     When asked if he felt he complied with all applicable policies/regulations to prevent discrimination, reprisal, and harassment, Defendant Jackson did not answer the question directly and instead opined that with what he knew now, he would have contacted HD for guidance.

76.     When asked if he had anything additional to add to the record, Defendant Jackson wrote how he wished he sent the matter to HD to handle for him and he believed the situation would have worked out properly if he did so. Moreover, he admitted his lack of familiarity with religious accommodation protocols and admitted creating the perception that Plaintiff was discriminated against and unwelcome in the agency on the basis of religion.

77.     On March 31, 2022, Defendant Jordan submitted his responses to written interrogatories requested by Ms. Sepulveda.

78.     When asked if he was aware of Plaintiff's religious beliefs and when he became aware of said beliefs, Defendant Jordan wrote that he was made aware of it on June 16, 2021 when Plaintiff emailed and stated he observes the sabbath on Saturday.

79.     When asked about his involvement in the alleged acts of discrimination that took place on June 16, 2021 and the denial of the request for accommodation on June 20, 2021, Defendant Jordan responded that he informed Plaintiff via email on June 20, 2021 that Defendant NGA Police did not offer an alternate screening date.

80.     When asked about his involvement in the denial of the religious accommodation, Defendant Jordan wrote that to his knowledge, there were no planned alternate screening dates nor were there ever any alternate screening dates.

81.     When asked about how Plaintiff's request would cause undue hardship, Defendant Jordan replied that the initial screening has multiple events, has trained proctors for the physical fitness testing, the event required multiple officers and some of them were there on special assignment, increased monetary costs for staffing the events, and that one event is offered per hiring cycle for those reasons. At no time did Jordan indicate anything about making efforts and asking if officers were interested in conducting alternative testing dates nor did he or his superiors ever make such inquiries.

82.     When asked if he was the hiring manager for the positions Plaintiff applied for, Defendant Jordan replied he was the hiring official for only the event on June 26, 2021.

83.     When asked if anyone else was involved in the decision to deny Plaintiff's religious accommodation request, Defendant Jordan identified then Tinnin, who is also identified as Defendant Tinnin in the instant complaint and that Defendant Tinnin confirmed no alternate testing appointments were available.

84.      When asked if he followed the guidance of the person he reached out to for guidance, Defendant Jordan answered in the affirmative.

85.     When asked if he reached out to anyone in Defendant NGA's Human Resources (HR) apparatus, Defendant Jordan wrote he did not reach out to that entity.

86.     When asked if pre-employment screening dates were held on Saturdays or any other day of the week, Defendant Jordan wrote that such events were always held on Saturdays.

87.     When asked if he was familiar with the policies/regulations governing religious accommodations at Defendant NGA Police, Defendant Jordan wrote he did not know the policy numbers of the agency but he completed the required training courses for hiring managers.

88.     When asked if he complied with the controlling policies/regulations governing Plaintiff's request for religious accommodation when responding to the request and if not, why not, Defendant Jordan wrote that he complied with the directions given to him as the hiring manager from his chain of command.

89.     When asked for a response to the allegation that the denial of Plaintiff's request for accommodation was based on Plaintiff's religious beliefs, Defendant Jordan wrote that the claim was baseless because every request for alternative testing accommodation is denied.

90.     When asked if Plaintiff's inability to attend the pre-employment screening test event would automatically disqualify him from further selection consideration and if there were any instances where an officer was hired without going through the selection process, Defendant Jordan wrote that being unable to attend a hiring event has never disqualified anyone from future hiring processes and to his knowledge, nobody has ever been hired as an officer without going through the process.

91.     When asked if at the time the alleged incidents occurred, he was aware of the agency policies in place to prevent harassment, discrimination, and reprisal and if so, his understanding and how he learned about it, Defendant Jordan wrote that SIPW has the "directors

memorandums [sic]" posted in the Administration area and Police Control Centers, agency personnel were required to review those documents, and he successfully completed coursework in the topics of Diversity and EEO for Decision Makers and External Hiring Process, which referenced the aforementioned policies.

92.     When asked if the agency posts the policies related to EEO/prevention of discrimination, harassment, and reprisal in public places and if so, how they are disseminated, Defendant Jordan wrote that SIPW has the "directors memorandums [sic]" posted in the administration area and Police Control Centers and they are required to review those documents.

93.     When asked if Defendant NGA Police provided Defendant Jordan with training regarding EEO/prevention of discrimination, harassment, and reprisal and when he last received such training, Defendant Jordan wrote that he completed Diversity and EEO for Decision Makers on September 20, 2021 and External Hiring Process on February 23, 2022.

94.     When asked if he had any additional documentation to submit or any information to add to the record, Defendant Jordan wrote that he did not have any additional documentation to submit and that he did not have any additional information to add to the record.

95.     On April 4, 2022, Defendant Tinnin submitted responses to written interrogatories. These responses were not provided to Plaintiff during the investigation phase and therefore Plaintiff had no opportunity to give a rebuttal.

96.     When asked, Defendant Tinnin identified his first and second line supervisors as Assistant Chief of Police Mike Oakes and Chief of Police Frank Kenney respectively.

97.     When asked about his involvement in the denial of Plaintiff's request on June 16, 2021, which was ultimately denied on June 20, 2021, Defendant Tinnin wrote that he knew

someone requested an alternate test date but never saw Plaintiff's reasonable accommodation request.

98.    When asked about his involvement in the denial and why he denied the request, Defendant Tinnin wrote that it was normal for people to ask for an alternate test date but could not accommodate the request because Defendant NGA Police has applicants complete every portion of the written exam, physical fitness test, and interview on Saturdays.

99.    When asked if he was the hiring manager for the positions Plaintiff applied for, Defendant Tinnin replied he believed it was Defendant Jordan.

100.    When asked if he was the hiring manager whether or not he reached out for assistance when addressing Plaintiff's request for religious accommodation, Defendant Tinnin responded he was not the hiring manager.

101.    When asked if he reached out to anyone in Human Resources for assistance, Defendant Tinnin responded he did not do so.

102.    When asked if he ever had any requests for an accommodation from an applicant/employee about the Saturday pre-screening date, whether or not he granted it, and the differences in the situation and any undue hardship to the agency, Defendant Tinnin replied, "Yes. The ones I have denied are in reference to military deployments (individual was out of the country [sic]), applicants having to work on testing day, and can't make it due to a wedding or birthday event."

103.    When asked if he ever had any requests for any accommodation from any applicant/employee about the Saturday pre-screening date and whether he granted it in the two-year period prior to September 2021, Defendant Tinnin wrote "Yes and no I did not grant them."

104.    When asked about his familiarity with policies/regulations governing religious accommodations in his agency and if so to cite the relevant policies, Defendant Tinnin wrote that yes, he was familiar with the governing policies/regulations, all requests for reasonable or religious accommodation go through Defendant NGA's Office of Diversity and Equal Opportunity [sic]. Moreover, he wrote that when an employee or applicant requests an accommodation, the supervisor and the employee/applicant should then have an interactive discussion and the responsibility is that of the first line supervisor to grant, modify, or deny the request if there is an undue hardship to the agency.

105.    At no time did such an interactive process take place between Plaintiff and any of the Defendants. Plaintiff's requests were denied outright without any real and thoughtful discussion of undue hardship.

106.    When asked if he complied with the governing policies/regulations for religious accommodations when responding to Plaintiff's request, Defendant Tinnin responded he did not handle the request. This claim is contradicted by the written interrogatories of Defendant Jordan who wrote he consulted with Defendant Tinnin who believed that Plaintiff was not entitled to any religious accommodation whatsoever.

107.    When asked how he would respond to Plaintiff's allegation that the decision to deny the accommodation was motivated by Plaintiff's religious beliefs, Defendant Tinnin responded that he did not know Plaintiff's religion at the time. This is factually impossible because Defendant Jordan wrote in his interrogatories that he consulted with Defendant Tinnin in issuing the decision to deny the request for an alternate testing date as a religious accommodation.

108.    When asked if Plaintiff was automatically disqualified from further processing for failure to complete the pre-employment screening test event and whether someone was hired as an officer without going through the process, Defendant Tinnin wrote "No."

109.    When asked about whether he was aware of the agency's policies designed to prevent discrimination, harassment, and reprisal at the time the alleged incidents of discrimination took place and about his understanding of those policies, Defendant Tinnin wrote, "The Agency's policy on anti-harassment is that harassment, based on any protected characteristic whether it be race, color, sex, age, national origin, disability, **religion**, **reprisal**, or genetic information, and retaliation against any individual submitting or providing information regarding a harassment report are unacceptable and unlawful which will not be tolerated. Anti-harassment is one of the **big three zero tolerance policies**." [Emphasis added.]

110.    When asked if the Defendant NGA posts their policies about EEO/prevention of discrimination, harassment, and reprisal, how they are publicized, and how the information is disseminated to employees, Defendant Tinnin responded in the affirmative and that the agency has annual anti-harassment training and the policies are posted throughout the agency.

111.    When asked if he was provided training about EEO/prevention of discrimination, harassment, and reprisal and about when he last received such training, Defendant Tinnin responded that he receives such training annually.

112.    When asked for witnesses to provide first-hand information to corroborate his testimony, Defendant Tinnin responded that Assistant Chief of Police Mike Oakes would do so.

113.    When asked if there was any corroborating documentation he would like to submit for inclusion into the record, Defendant Tinnin wrote, "No."

114.    When asked if he had any additional information to add into the record, Defendant Tinnin responded, "No."

115.    On or about April 5, 2022, Defendant McNeill provided written responses to interrogatories requested by Ms. Sepulveda. To date, Plaintiff was never provided an opportunity to rebut these remarks by Defendant McNeill.

116.    When asked about his awareness of Plaintiff's request for religious accommodation due to Shabbat observance, Defendant McNeill wrote that on June 16, 2021, he was cc'd on an email from Plaintiff informing him of the issue.

117.    When asked about his involvement in or knowledge of the denial of Plaintiff's request for an alternate screening date, Defendant McNeill answered that he was the first line supervisor of the hiring manager [Defendant Jordan] and was consulted about the denial of an alternative testing date for the hiring process.

118.    When asked about his involvement in the denial, Defendant McNeill wrote that the determined date was the only date within the timeframe for the hiring process where all personnel and facilities were available for use.

119.    When asked about direct information to support and/or refute the request based on undue hardship, Defendant McNeill claimed that the testing process required significant personnel and logistical planning, the event was held at two different locations, they required thirty (30) personnel to administer the process, and compliance with the COVID-19 guidelines. No other deponent has raised such reasoning and it conflicts with the statements of other deponents.

120.    When asked to identify the hiring manager for the positions, Defendant McNeill identified Defendant Jordan as the hiring manager.

121.    When asked if he reached out for assistance with this matter and whether or not he followed the guidance of said person and to explain if not, Defendant McNeill answered, "N/A".

122.    When asked if he reached out to anyone in Human Resources for assistance, Defendant McNeill answered "No".

123.    When asked about whether, to his knowledge, pre-employment screening dates were always held on Saturdays and whether or not they were held any other day of the week, Defendant McNeill wrote that for the past 2+ years, they always held the pre-employment screenings on Saturdays because of greater applicant turnout and streamlined hiring process instead of making multiple trips during the week.

124.    When asked about his familiarity with the policies/regulations governing EEO in his agency, and if he did, to cite the relevant policies, Defendant McNeill wrote, "Yes, EEO policies based on nondiscriminatory actions [sic]."

125.    When asked whether Plaintiff was disqualified automatically from further consideration for failure to attend the pre-employment screening and whether or not someone was hired as an officer with Defendant NGA Police without completing the process, Defendant McNeill wrote, "The written test and oral interview are required for selection."

126.    When asked about whether Defendant NGA posts their EEO/prevention of discrimination, harassment, and reprisal in public places or otherwise publicizes them and how it is disseminated to employees, Defendant McNeill wrote that the policies are available on Defendant NGA's intranet page and posted in break areas.

127.    When asked about whether he received training on EEO/prevention of discrimination, harassment, and reprisal and if so, when the last training session he took was given,

Defendant McNeill wrote that annual EEO training was required and he last took an EEO training course in April 2021.

128.    When asked if he had any corroborating documentation to submit for inclusion in the file, Defendant McNeill wrote, "No".

129.    When asked if he had anything further to add to the record, Defendant McNeill wrote that he advised Plaintiff of the availability of additional testing dates.

130.    On or about April 6, 2022, Mr. Mark Jackowski ("Mr. Jackowski") submitted responses to written interrogatories requested by Ms. Sepulveda. Mr. Jackowski is the Reasonable Accommodation Program Manager in the ODER Division of Defendant NGA. To date, Plaintiff never had an opportunity to rebut these responses.

131.    When asked about his relationship with Defendants Jordan, Tinnin, and Jackson during the June to September 2021 timeframe, Mr. Jackowski wrote that he had no relationship with the aforementioned Defendants but Jackowski was copied on emails with Defendants Tinnin and Jackson as a management official for reasonable accommodation requests for other individuals. Defendant Jordan also inquired about a reasonable accommodation request for another individual.  Jackowski left a voicemail for Defendant Jordan to contact him or Jessica Davis ("Davis") who was a teammate of Jackowski on the reasonable accommodation team. Jackowski also answered that he did not recall any follow up from Defendant Jordan.

132.    When asked for his involvement in the denials of Plaintiff's on July 14, 2021, and September 9, 2021 requests for alternate testing dates based on religious reasons and what knowledge he had of Plaintiff's requests for religious accommodations, Mr. Jackowski wrote that he did not have any direct knowledge of Plaintiff's requests.

133.    When asked about whether anyone consulted with him about Plaintiff and/or Plaintiff's request for a religious accommodation and the details of who, when, and what information was shared with him and the advice/guidance he offered, Mr. Jackowski wrote: 1) That he was emailed on November 29, 2021, by Ms. Thomas asking to speak about religious accommodations for a hiring event; 2) He [Mr. Jackowski] spoke by phone with Ms. Thomas by phone but didn't have the exact date of the phone conversation; 3) While he does not have physical documentation, of the phone call, Mr. Jackowski wrote he explained that Ms. Thomas said that an applicant (not naming Plaintiff specifically) was seeking a religious accommodation for a change/alternate date for attendance at a pre-employment testing event; 4) Mr. Jackowski wrote he vaguely remembered explaining to Ms. Thomas that hiring event "POCs" should verify the sincerely held religious belief with the applicant and offer an alternative testing date unless doing so would cause more than a de minimis undue hardship; 5) Mr. Jackowski wrote that normally, ODE does not handle religious accommodation requests, ODE has referred the requests to HD, or the employee and the supervisor to discuss between themselves; and 6) Mr. Jackowski wrote that on October 26, 2021, he received an email from Mr. Coleman indicating, "... Mr. Jeffrey Podell [Plaintiff] … was an applicant for a Police Officer job. **He was denied the right to reschedule his testing to an alternate date due to his religion."** [Emphasis added].

134.    When asked if he was consulted by anyone for guidance, what if any guidance was provided, and how the actions varied from that guidance and explanation as to why the guidance was not followed, Mr. Jackowski wrote that to his recollection, nobody else consulted him on this matter.

135.    When asked if in similar situations whether or not it would have been normal protocol for the Reasonable Accommodation Manager to be consulted when an

employee/applicant makes a religious accommodation and if not, why not, Mr. Jackowski wrote, "No – the ODE RA program typically handles disability Reasonable Accommodation requests. We always referred religious accommodation requests (of this type) to HD, or as a matter to be discussed between employee/supervisor."

136.    When asked what policies and regulations govern religious accommodations for employees, Mr. Jackowski wrote that he did not believe Defendant NGA had an official policy for religious accommodations.

137.    When asked if the same policies and regulations apply to applicants and if not, how they differ for applicants, Mr. Jackowski wrote that he could not answer the question.

138.    When asked about Defendant NGA's obligation to Plaintiff when he requested an alternate pre-employment screening date as a religious accommodation, Mr. Jackowski wrote that he could not answer the question.

139.    When asked if accommodating Plaintiff's would have posed an undue hardship and if so, why, Mr. Jackowski wrote that he was unsure and it would depend on the number of personnel required to conduct the testing and whether it would cause a *de minimis* undue hardship *[sic]*.

140.    When asked if, to his knowledge, an alternate testing date was offered to Plaintiff, Mr. Jackowski replied that he did not know.

141.    When asked about whether or not failure to attend the pre-employment screening event would automatically disqualify Plaintiff from consideration and whether or not anyone was ever hired as an officer without completing the pre-screening process, Mr. Jackowski wrote that he did not know.

142.    When asked about whether Defendant NGA provided Mr. Jackowski with EEO/prevention of discrimination, harassment, and reprisal and the last time he received such training, he wrote that he completed No Fear Act training [sic] on November 23, 2020 and anti-harassment training on April 1, 2021.

143.    When asked about if Defendant NGA posts their policies on EEO/prevention of discrimination, harassment, and reprisal in public places or otherwise publicizes them and how it is disseminated to employees, Mr. Jackowski wrote that the EEO policies are posted on the ODE website.

144.    When asked about his understanding of Defendant NGA's policies regarding discrimination, harassment, and reprisal and where to go or whom to contact to report concerns about EEO/prevention of discrimination, harassment, and reprisal, Mr. Jackowski wrote that employees have up to 45 days from the date of the alleged incident to report it to an EEO counselor.

145.    When asked for corroborating documentation to submit into the record, Mr. Jackowski wrote he was attaching emails about the matter.

146.    When asked if there was anything else he would like to add into the record, Jackowski wrote that while Defendant NGA does not have an official religious accommodation policy, Ms. Thomas did reach out to him to see if the RA and EEO team[s] could jointly provide training to personnel from Defendant NGA Police regarding religious accommodations. He wrote that he was open to the idea and would have explained the law and undue hardship to the best of his ability but the training was canceled by personnel from Defendant NGA Police.

147.    On or about April 6, 2022, Plaintiff submitted a written rebuttal to the answers provided by Defendants Jordan and Jackson in their respective interrogatories.

30

148.    In the first question, Plaintiff was told he was provided with the declaration of Defendant Jackson for review and was asked to provide additional information not already in the record. Below is Plaintiff's verbatim response:

**Marcus Jackson claims that he was aware of the request by Jeff Podell for a religious accommodation. He says the request "may have fell off my radar and I forgot to follow up with this request." *[sic]* He attempted to blame Assistant Chief Richard Weiss that such request "could not be made due to changes such as paying more overtime on a Sunday and an inconvenience to all other applicants." In spite of Jackson's attempt to throw his supervisor "under the bus" as it were, he clearly was aware of the request for the accommodation, did not act upon it, and with constructive intent, discriminated against Mr. Podell. A more obvious and evident discrimination would be hard to imagine. It appears that the response is an attempt to evade "intent" which Jackson claims he did not deny the request due to religious beliefs, but allegedly due to his incompetence and the alleged involvement of his superior. Blaming "higher ups" is the *lingua franca* of discrimination, and is as hackneyed and inappropriate excuse as was ever devised. When asked about how he believed he complied with the policies with respect to EEO prevention of discrimination, he states: "With what I know now, I would have contacted HD to decide on this matter." In other words, he would not have granted an accommodation but again would have tried to pass it off to someone else.**

[Emphasis added]

149.    The second question.

149.1.    Plaintiff was told that he was provided with the declaration of Defendant Jordan for review and was asked to provide additional information not already in the record. Below is Plaintiff's verbatim response:

This deponent merely states that he e-mailed Mr. Podell and advised that "We do not offer an alternate screening date." That is obvious from the course of events and, of course, supports Mr. Podell's claim of discrimination based upon religion.

149.2.    The deponent attempted to justify the discriminatory act based upon SIPW which, "has not planned for or had an alternate screening test date for any hiring process that have been conducted." The justification for failing and refusing to accommodate

Plaintiff, or even attempt to accommodation, was said to be based upon the existence of "multiple events of this magnitude." Without providing any specifics, it was claimed that this would cause, "staffing issues and increased monetary costs for manning." Again, there is no support for this statement since no one was ever asked if they would be willing to work Sunday or during the week. It is believed and therefore averred that during the week could certainly have been provided.

149.3. The deponent also stated that, "majority rules." The Saturday events "accommodates a number of officers needed and allows for easier access to the facility due to a majority of the employees not on site." If this standard was permitted, other protected groups would never be accommodated. The "majority rules" justification for discrimination has never been accepted by a United States court.

149.4. Defendant further stated that that no other request for religious accommodation had ever been made. This conduct has a dramatically illegal impact on minorities. Inconsistently, deponent claims that he was not motivated by Mr. Podell's religious beliefs or observance because, "every request for an alternative test date, regardless of reason given, was denied." Defendants attempt to justify discrimination and disparate impact based up on the fact that everyone is equally discriminated against.

149.5. It is averred, upon information and belief, that there is a total lack of training, conditioning, and respect for minority groups. The conduct and justification of Defendants violates the statutory obligations as well as proclamations and the regulatory structure. The conduct of Defendants represents intentional discrimination, disparate impact as well as a policy and practice which impacts minorities, including those whom, because of religious obligations, are unable to participate in Saturday events. The hiring

process is closed to all but those considered majority by the interviewing personnel, the Department, and effectively the United States of America.

150.    On April 7, 2022, Defendant Dublin submitted answers to written interrogatories requested by Ms. Sepulveda. To date, Plaintiff was never given any opportunity whatsoever to rebut the statements made by Defendant Dublin.

151.    When asked for his first and second line supervisors at the time of the issuance of the interrogatories, Defendant Dublin replied Sgt. William Brahmstedt and Defendant Lt. Jackson respectively.

152.    When asked for the identifying information of his first and second line supervisors as of September 2021, he responded with the same aforementioned names.

153.    When asked about his awareness of Plaintiff's religious beliefs and if so, how he became aware, Defendant Dublin wrote he was aware Plaintiff observed the Jewish sabbath and that he was on notice due to the emails sent by Plaintiff in July and August of 2021.

154.    When asked about his involvement in and knowledge of Plaintiff's requests for and ultimate denial of alternative testing dates based on his religious beliefs, Defendant Dublin responded that Plaintiff did not request an alternate testing date in his first email and asked if alternate testing dates were available. Plaintiff's emails did inquire about alternative testing dates based on his religious beliefs but Defendant Dublin denied making a denial of alternative testing dates even though Plaintiff made a request explicitly based on his religious beliefs.

155.    When asked about his involvement in the denial of alternative testing accommodations based on Plaintiff's religious beliefs, Defendant Dublin wrote that he did not deny Plaintiff's requests but instead stated that the only testing dates available were on Saturdays. Moreover, regarding the second email request, the email from Defendant Jackson previously

referenced in this complaint did show that Defendant Jackson promised Plaintiff he would inquire with Defendant NGA's Human Resources apparatus but to date, Plaintiff never received any follow up communications.

156.    When asked if he knew if HR was contacted about Plaintiff's requests for reasonable accommodation based on religious beliefs, Defendant Dublin wrote that he was unaware if HR was contacted.

157.    When asked about who the hiring manager was for the positions Plaintiff applied for, Defendant Dublin wrote he was the hiring manager for the July 2021 event but did not know who the hiring manager was for the September 2021 event.

158.    When asked if he consulted with anyone about Plaintiff's requests for alternative scheduling for testing due to religious reasons, whom he spoke to, and the response of those persons, Defendant Dublin wrote he consulted Defendant Jackson and Defendant Young but did not remember the date. Additionally, Defendant Dublin did not answer the question completely because he did not articulate what guidance he received from Defendants Jackson and Young.

159.    When asked if he knew whether pre-employment testing was held on a day other than Saturday, Defendant Dublin responded that to his knowledge, test dates are held on Saturdays and he was unaware of testing being held on any other day.

160.    When asked if he was familiar with the policies/regulations governing religious accommodations in his agency, Defendant Dublin wrote, "No."

161.    When asked if Plaintiff would be automatically disqualified from further selection consideration based on inability to attend the pre-employment screening test and whether or not anyone was hired without completing the screening process, Defendant Dublin wrote that police

34

officer candidates must pass the pre-employment screening and he knows of no other officers who did not participate in a pre-employment event.

162.    When asked if Defendant NGA Police provided him with training about EEO/prevention of discrimination, harassment, and reprisal, and when he last received training, Defendant Dublin wrote that he last received the training in August 2020. By his own admission, Defendant Dublin has failed to comply with applicable policies and is out of date on his EEO training.

163.    When asked if Defendant NGA posts their policies on EEO/prevention of discrimination, harassment, and reprisal in public places or otherwise publicizes them and how the information is disseminated, Defendant Dublin responded in the affirmative and that the information is posted throughout the building. In other words, the presence and availability of these policies is widespread.

164.    When asked for his understanding (if any) of Defendant NGA's policies regarding discrimination, harassment, and reprisal, and where/whom to contact about concerns of discrimination, harassment, and reprisal, Defendant Dublin wrote that the agency has a zero tolerance policy regarding discrimination, harassment, and reprisal and reports can be made to a supervisor or HD. At no point did Defendant Dublin or any other Defendant offer opportunities for Plaintiff to speak with a supervisor, HD, or an EEO counselor in order to pursue a temporary or permanent accommodation for Plaintiff's sincerely held religious beliefs.

165.    When asked for corroborating documentation he would like to submit into the record, Defendant Dublin wrote to reference the emails between Plaintiff and Defendant NGA Police.

166.    When asked if he had anything he would like to add into the record, Defendant Dublin wrote that to their knowledge, Plaintiff was not denied an opportunity to participate in the hiring events, Plaintiff's schedule did not coincide with that of Defendants, and Plaintiff's religious beliefs were not a factor in deciding when to hold hiring events.

167.    Upon information and belief, no collective bargaining agreement/union contract applies to the scheduling of sworn police officer employees of Defendant NGA Police.

168.    On April 11, 2022, Mr. Joseph P. Burke ("Mr. Burke") of Defendant NGA, emailed Ms. Thomas with a roster of persons who were selected for employment and the Standard Form (SF) 50 for selectees along with their effective dates. The earliest date for AON 20210204 was the SF 50 for Selectee 2 and that was dated April 1, 2019 and the other SF 50 provided was for Selectee 5 and the effective date of that SF 50 was January 30, 2022.

169.    For AON 20210202, there were nine (9) selectees and the earliest date for start of employment per the SF 50s provided were those for Selectee 4, with an effective date of December 6, 2021, Selectee 5 with an effective date of February 28, 2022, Selectee 6 with an effective date of January 31, 2022, Selectee 8 with an effective date of February 28, 2022, and Selectee 9 with an effective date of February 28, 2022.

170.    On April 11, 2022, Defendant Weiss provided responses to written interrogatories requested by Ms. Sepulveda. Plaintiff was not provided an opportunity to submit a rebuttal to the responses.

171.    When asked about his relationship with Defendant Jackson, Defendant Weiss wrote that while they both work for SIP, Defendant Jackson is not under his command.

172.    When asked about his awareness of Plaintiff's religious beliefs and if so, how he became aware, Defendant Weiss responded that he did not know Plaintiff.

173.     When asked about his involvement in or knowledge of requests and the denials of said requests for alternative screening dates, Defendant Weiss wrote that he played no role in the selection of pre-employment screening dates.

174.     When asked if anyone consulted with him about Plaintiff and/or Plaintiff's requests for religious accommodation, the information shared with him in such event, and what if any guidance he offered, Defendant Weiss wrote that to the best of his knowledge, nobody ever consulted with him about a religious accommodation request for alternate pre-employment testing. This is also directly rebutted by the written interrogatories of at least one Defendant.

175.     When asked for direct information to support and/or refute that the requests made by Plaintiff would have caused undue hardship to the agency, Defendant Weiss wrote that he knew nothing of Plaintiff or Plaintiff's allegations. Note that this is directly rebutted by the aforementioned written testimony under oath of Defendant Jackson.

176.     When asked about whether his agency provided him with EEO/prevention of discrimination, harassment, and reprisal training and when he last received such training, Defendant Weiss wrote he received such training circa February 2022.

177.     When asked if his agency posts their policies on EEO/prevention of discrimination, harassment, and reprisal in public places or otherwise publicizes them and if so, how the information is disseminated to employees, Defendant Weiss wrote "Yes." as his response. In his response to this question, Defendant Weiss acknowledged the widespread availability of the EEO laws, regulations, and policies.

178.     When asked about his understanding, if any, of his agency's policies about preventing discrimination, harassment, and reprisal and where to go/whom to contact with concerns about discrimination, harassment, and reprisal, Defendant Weiss responded, "I feel my

understanding of the aforementioned Agency's policies is strong, and I consult with the Agency's Office of Diversity Management and Equal Opportunity (ODE) if I have any concerns/questions."

179. When asked for corroborating documentation for the file, Defendant Weiss wrote, "No."

180. When asked if there was anything he would like to add to the record, Defendant Weiss wrote, "No."

181. On or about July 8, 2022, Plaintiff was provided with the investigative file and options for escalating the matter in accordance with 29 C.F.R. § 1614.108(f). No findings were made in the investigative file. Defendant NGA did not take final action within 180 days from the date of receipt of complaint so Plaintiff is permitted to file civil action pursuant to 42 U.S.C. § 2000e-16(c).

182. Upon information and belief, the option for going before an administrative judge is severely delayed and Plaintiff is not likely to receive a hearing for years, delaying justice and therefore denying justice in violation of 29 C.F.R. § 16104.109.

183. Defendants are not religious organization employers as defined by Title VII of the Civil Rights Act of 1964.

184. Upon information and belief, it is the official policy Administration that diversity, equity, and inclusion are essential tools for enhancing the capabilities of Defendant DOD.

185. Upon information and belief, Jews are a religious minority who have suffered systemic discrimination by public and private actors throughout the history of the world such as the conduct of Defendants against Plaintiff.

186.    Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendants to otherwise avoid harm because Defendants never offered any such measures.

187.    Based on all of the above, Defendants engaged in a pattern and practice of failure to comply with the applicable laws, regulations, and policies governing equal employment opportunity.

## COUNT 1- VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (DISPARATE TREATMENT)

188.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 18**7** of this complaint as if fully restated herein.

189.    Plaintiff is an otherwise qualified applicant who met the initial qualifications to apply for the jobs and was not hired because of his practicing the Jewish faith.

190.    Defendants erected a barrier that made it more difficult for Plaintiff and other practitioners of the Jewish religion to obtain the benefits of employment with Defendants.

191.    Defendants acted with actual and constructive intent to discriminate against Plaintiff based on his sincerely held Jewish religious beliefs.

192.    Defendants have abdicated their responsibilities to obey and enforce the prohibitions against religious discrimination in employment decisions.

193.    Defendants knew or should have known that Title VII of the Civil Rights Act of 1964 is binding upon the Federal Government and they are forbidden from discriminating against Plaintiff as an applicant for employment based on his sincerely held Jewish religious beliefs. See 42 U.S.C. § 2000e-16(a).

194.    Defendants knew or should have known that nothing in Title VII of the Civil Rights Act of 1964 relieves Defendants as government agencies and officials, of their primary responsibilities to "... assure non-discrimination in employment as required by the Constitution and statutes or if its responsibilities under Executive Order 11478 relating to equal employment opportunity in the federal government. See 42 U.S.C. § 2000e-16(e) and Exec. Order No. 11478, 3 C.F.R. 1966-1970 Comp., p. 803, 34 Fed. Reg. 12985, (1969), as amended.

195.    Defendants' reasons for denying Plaintiff's right to religious accommodations were not consistent. One Defendant admitted that there were no undue hardships with offering the accommodation Plaintiff requested.

196.    Defendants intentionally pressured Plaintiff to violate the dictates of his sincerely held religious beliefs as a Jew in order to obtain employment with Defendant NGA Police.

197.    Defendants violated Title VII of the Civil Rights Act of 1964 by failing and refusing to engage with Plaintiff in any meaningful discussion or interactive process on multiple occasions regarding Plaintiff's needs for alternative testing arrangements based on his religious beliefs as a Sabbath observant Jew.

198.    Upon information and belief, Defendants' refusal to provide an accommodation based on religious beliefs is in violation of Title VII of the Civil Rights Act of 1964 because Plaintiff's religion is not a *bona fide* occupational qualification.

199.    Pursuant to 42 U.S.C. § 2000e-3(b), Defendants knew or should have known that they are forbidden from engaging in employment practices that have the purpose or effect of discriminating against Plaintiff based on religion.

200.    29 C.F.R. § 1605.3, Title VII of the Civil Rights Act of 1964, prohibits failure to hire an applicant in order to avoid accommodating an applicant's religious practice regardless of

whether the applicant informed the employer of the need for an accommodation. The actions of Defendants clearly demonstrate flagrant intent to avoid even entertaining Plaintiff's requests for religious accommodations in spite of EEOC guidance and the applicable laws and regulations. Defendants did have the resources to accommodate Plaintiff's requests that were minimally intrusive and narrowly tailored. Defendant admitted in written interrogatories that the accommodations requested by Plaintiff would pose no undue hardship to Defendant NGA Police.

201.    Defendants violated Title VII of the Civil Rights Act of 1964 by employing a selection method that perpetuates discrimination against Sabbath observant Jews when by information and belief, other testing phases were conducted during the week, by Defendants' admissions there was a shift available to accommodate Plaintiff's religious beliefs if he was hired, and Defendants patently refused to dialogue with Plaintiff about any of his requests for religious accommodation. At least one representative of Defendant NGA admitted in writing that Plaintiff had the right to a religious accommodation.

202.    Defendants denied Plaintiff the ability to complete the phases of the screening process at every instance when Plaintiff requested the simple, reasonable accommodation of an alternative testing date due to sincerely held religious beliefs.

203.    Defendants cannot claim undue hardship because at least one Defendant wrote in their interrogatories under oath that there was a work shift schedule available to accommodate Plaintiff's religious beliefs. More specifically, Defendant Jackson wrote under oath in his interrogatories that Plaintiff's request for alternative testing arrangements based on his religious beliefs would not cause undue hardship to Defendants.

204.    Defendants cannot claim undue hardship as a defense based on a collective bargaining agreement because, upon information and belief, no collective bargaining agreement

exists governing labor relations, and at least one Defendant identified a shift Plaintiff could work that would accommodate Plaintiff's religious requirements.

205.    Defendants cannot claim undue hardship as a defense because, upon information and belief, other stages of processing such as the background investigation, security clearance subject interview, polygraph examination, and medical examination take place during the week.

206.    At least one Defendant wrote in written interrogatories that Defendant NGA Police is a 24/7/365 operation.

207.    At least one Defendant admitted in written interrogatories that he would never grant any requests for religious accommodations and that no one is entitled to such accommodations.

208.    Some of the Defendants in this complaint admitted to the widespread availability and dissemination of the EEO laws, regulations, and policies and how they are required to be on notice about the same.

209.    Defendants failed or refused to produce records in the form of applicant flow data for the job announcements Plaintiff applied to (i.e., the full range of applicant flow data broken down by religion for all applicants who applied for the Police Officer positions with Defendant NGA Police).

210.    Defendants failed or refused to produce records in the form of applicant hiring data for the job announcements Plaintiff applied to (i.e., the full range of applicant flow data broken down by religion for all applicants who applied for the Police Officer positions with Defendant NGA Police).

211.    Defendants failed or refused to produce records in the form of applicant disqualification data for the job announcements Plaintiff applied to (i.e., the full range of applicant

disqualification data broken down by religion for all applicants who applied for the Police Officer positions with Defendant NGA Police).

212.    Defendants failed or refused to produce records in the form of screening process data for the job announcements Plaintiff applied to (i.e., the full range of screening process data and documentation, including Defendants' screening practices and data related to all prospective candidates who underwent the selection process broken down by legally protected classes such as religion).

213.    Defendants failed or refused to produce records in the form of recruitment and outreach data for the job announcements Plaintiff applied to.

214.    According to the EEOC guidance, there are best practices that Defendants failed to utilize such as: 1) Informing employees and applicants that they will make reasonable efforts to accommodate religious practices; 2) Employers should train supervisors and managers on how to recognize religious accommodation requests from employees; 3) Employers need to individually assess each request to avoid stereotypes about what constitutes a religious belief or practice or what type of accommodation is appropriate; 4) Employers and employees should confer fully and promptly to the extent needed to share any necessary information about the employee's religious needs and the available accommodation options; 5) Managers and supervisors should be trained to consider alternative available accommodations if the particular accommodation requested would pose an undue hardship; and 6) When faced with a request for a religious accommodation which cannot be promptly implemented, an employer should consider offering alternative methods of accommodation on a temporary basis, while a permanent accommodation is being explored.

215.    An employer is required to keep the employee apprised of the status of the employer's efforts to implement a permanent accommodation. At no time did Defendants engage

in any of these means to attempt to accommodate Plaintiff's sincerely held religious beliefs while Plaintiff was applying for the aforementioned jobs.

216.    Plaintiff seeks all rights and remedies to which he is entitled pursuant to Title VII of the Civil Rights Act of 1964, including but not limited to compensatory and punitive and/or liquidated damages, declaratory and injunctive relief, and attorney fees and costs.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive and/or liquidated damages, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

## COUNT 2- VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (DISPARATE IMPACT)

217.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 216 of this complaint as if fully restated herein.

218.    At least one representative of Defendant NGA admitted in writing that Plaintiff did indeed have a right to request rescheduling of testing processes based on his sincerely held religious beliefs and that Plaintiff was denied that right on the basis of the same.

219.    Defendants intentionally pressured Plaintiff to violate the dictates of his sincerely held religious beliefs as a Jew in order to obtain employment with Defendant NGA Police.

220.    Based on the above facts and circumstances, Defendants acted with actual and/or constructive intent to discriminate against Plaintiff based on his sincerely held religious beliefs as a Jew.

221.    Defendants knew or should have known of the provisions of 42 U.S.C. § 2000e-3(b) and the EEOC's official position that Defendants are forbidden from engaging in employment practices that have the purpose or effect of discriminating against Plaintiff based on religion.

222.    Defendants knew or should have known that according to the EEOC's official guidance on preventing religious discrimination and complying with EEO laws and regulations, as per 29 C.F.R. § 1605.3, Title VII of the Civil Rights Act of 1964 prohibits failure to hire an applicant in order to avoid accommodating an applicant's religious practice, whether or not the applicant informed the employer of the need for an accommodation. The actions of Defendants clearly demonstrate an intent to avoid even entertaining Plaintiff's requests for religious accommodations in spite of EEOC guidance. Defendants did have the means to accommodate Plaintiff's requests that were minimally intrusive and narrowly tailored. Defendants knew or should have known of the aforementioned guidance, law, and regulation, and been briefed on them during required anti-discrimination training. Defendants are entrusted with the responsibility to comply with the same.

223.    Defendants engaged in disparate impact employment discrimination in violation of Title VII of the Civil Rights Act of 1964 by intentionally discriminating against Plaintiff based on religion and employing a selection method that perpetuates discrimination against Sabbath observant Jews when other testing phases were, upon information and belief, conducted during the week, and there was a work shift available to accommodate Plaintiff's religious beliefs if he was hired. Defendants refused to dialogue with Plaintiff about any of his requests for religious

accommodation. Furthermore, at least one Defendant wrote in written interrogatories that Plaintiff's request for accommodation would not cause undue hardship.

224.    As a result of Defendants' actions, Plaintiff has suffered humiliation, emotional distress and economic injuries.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive and/or liquidated damages, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

## COUNT 3- RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

225.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 224 of this complaint as if fully restated herein.

226.    Title VII of the Civil Rights Act of 1964 prohibits retaliation by an employer because an individual has engaged in a legally protected EEO activity.

227.    Each time Plaintiff made a request in writing via email for a religious accommodation in the form of alternative testing arrangements, Defendants subsequently and within close temporal proximity of each request, denied Plaintiff's requests in writing via email without engaging in any substantive dialogue whatsoever.

228.    Some of the Defendants in this complaint admitted to the widespread availability and dissemination of EEO policies, laws, and regulations and how they are required to be on notice about the same.

229.    At least one Defendant admitted in interrogatories that the official posture of Defendant NGA is zero tolerance for discrimination based on religion.

230.    Each time Plaintiff's request for religious accommodation was denied, it created a perception and reality for Plaintiff that he is not welcome within the agency and should never bother applying for a job with Defendants due to his sincerely held religious beliefs. One Defendant admitted in the answers he provided in response to written interrogatories, to creating such a perception.

231.    Defendants intentionally pressured Plaintiff to violate the dictates of his sincerely held religious beliefs as a Jew in order to obtain employment with Defendant NGA Police.

232.    Plaintiff suffered adverse employment actions in the form**s** of being denied his rights to reasonable accommodation based on his sincerely held Jewish religious beliefs and ultimately being eliminated from consideration for employment by Defendants' actions.

233.    Upon information and belief, it is the official position of the EEOC that filing a request for religious accommodation constitutes legally protected EEO activity.

234.    The totality of the circumstances demonstrates that a causal link exists between Plaintiff's protected EEO activities and the adverse actions taken by Defendants.

235.    Plaintiff has suffered humiliation, emotional distress and economic injuries as a result of the discriminatory actions by commission and omission perpetrated by Defendants.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee

was hired, award him damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive and/or liquidated damages, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is appropriate.

## COUNT 4- DUE PROCESS VIOLATION- 5TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION

236.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 235 of this complaint as if fully restated herein.

237.    At numerous stages of the formal complaint investigation process, various Defendants and other witnesses provided answers to interrogatories about Plaintiff's complaints of religious discrimination.

238.    Plaintiff was only given the opportunity to reply to the interrogatories submitted by Defendants Jordan and Jackson, but was not allowed the opportunity to provide written rebuttals to the submissions of Defendants and witnesses including but not limited to Defendant Tinnin.

239.    Defendants were also given multiple opportunities to rebut Plaintiff's complaints of discrimination, but Plaintiff was not offered the same opportunities.

240.    Upon information and belief, if Plaintiff were to seek relief via the administrative route, there is such a severe backlog of cases that Plaintiff will wait years and years for any prospective relief.

241.    Defendants' conduct and failure to act represent a failure to provide substantive and procedural due process.

242.    Therefore, in order to lessen the emotional distress, economic injuries, and humiliation Plaintiff has suffered due to the illegal discriminatory conduct of Defendants, Plaintiff must seek redress before this Honorable Court.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive and/or liquidated damages, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

## COUNT 5- EQUAL PROTECTION VIOLATION- 5TH AMENDMENT OF THE U.S. CONSTITUTION

243.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 242 of this complaint as if fully stated herein.

244.    Upon information and belief, the requirements of the Equal Protection Clause of the 14th Amendment are binding on the Federal Government via the Due Process Clause of the 5th Amendment.

245.    Defendant NGA gave Defendants numerous opportunities to rebut Plaintiff's allegations of employment discrimination but did not allow for Plaintiff to reply thereby giving Defendants "multiple bites at the apple."

246.    Throughout the course of the official EEO investigation, numerous Defendants and other witnesses made submissions into the investigative file but Plaintiff was not allowed to rebut

them even though they struck directly at the burden on Plaintiff to prove discrimination took place under applicable case law, statutory law, and regulations.

247.    Defendants therefore injured Plaintiff by not allowing him the equal opportunity to rebut these statements and gave Defendants an unfair advantage.

248.    Plaintiff was therefore denied the equal protection of the laws and regulations of the United States in direct violation of his civil rights and rights under the United States Constitution. He has suffered emotional distress and economic injuries as a result of the conduct of the Defendants.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive and/or liquidated damages, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

## COUNT 6- HOSTILE WORK ENVIRONMENT RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

249.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 248 of this complaint as if fully restated herein.

250.    Each time, when Plaintiff requested an accommodation of an alternative testing date for the pre-employment screening based on his sincerely held religious beliefs, Plaintiff was denied same and was made to feel unwelcome by the Defendants.

251.    A representative of Defendant NGA admitted in writing that Plaintiff was denied his right to reasonable accommodation based on his sincerely held religious beliefs.

252.    At least one Defendant employee admitted under oath in written interrogatories to making Plaintiff feel unwelcome at Defendant NGA Police on the basis of Plaintiff's sincerely held religious beliefs.

253.    The conduct of Defendants was severe and pervasive and created an objectively hostile or abusive work environment that a reasonable person would find hostile or abusive, and Plaintiff perceived the actions of Defendants to be hostile on the basis of his sincerely held religious beliefs.

254.    As stated above, Defendants intentionally pressured Plaintiff to violate the dictates of his sincerely held religious beliefs as a Jew in order to obtain employment with Defendant NGA Police.

255.    Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by Defendants or to otherwise avoid harm.

256.    Plaintiff has suffered emotional distress, humiliation, and economic injuries as a result of Defendants' discriminatory actions.

257.    The actions of the Defendants effectively altered the terms and conditions of the proposed employment for applicants.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive and/or liquidated damages, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and

costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

## COUNT 7- RELIGIOUS FREEDOM RESTORATION ACT

258.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 257 of this compliant as if fully restated herein.

259.    Plaintiff pleads all rights and remedies available pursuant to the Religious Freedom Restoration Act, 42 U.S.C. §§2000bb-2000bb-4 and any other Act providing for the protection of the right to religious observance and reasonable accommodation therefore.

260.    As a direct consequence of Defendants' violation of the aforesaid statute, Plaintiff has suffered the discrimination set forth.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, humiliation, emotional distress, punitive and/or liquidated damages, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

## COUNT 8- DECLARATORY RELIEF

261.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 260 of this complaint as if fully restated herein.

262. Under Fed. R. Civ. Proc. 57, Plaintiff is permitted to obtain declaratory judgment because it will terminate the controversy giving rise to the instant complaint.

263. Defendants intentionally pressured Plaintiff to violate the dictates of his sincerely held religious beliefs as a Jew in order to obtain employment with Defendant NGA Police.

264. The conduct and failures to act on the part of Defendants has impacted not only Plaintiff but a class of individuals whose religious observances are the same as those of Plaintiff. Declaratory relief is proper in order to address the harm suffered by others who would be impacted by the conduct and omissions of Defendants in the future.

265. Declaratory relief should include, but not be limited to, a declaratory judgment with respect to the rights of Jewish applicants to receive reasonable accommodations and non-discriminatory conduct. Defendants should be required to formally account for other Jewish applicants for whom they have denied reasonable accommodation and should be required to, in the future, comply with the standards, guidelines, and requirements in connection with the treatment of Jewish applicants, all others, and the necessity to provide reasonable accommodation.

266. Therefore, Plaintiff is entitled to declaratory relief.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

## COUNT 9- INJUNCTIVE RELIEF

267.    Plaintiff repeats and incorporates by reference, paragraphs 1 through 265 of this complaint as if fully stated herein.

268.    Plaintiff has suffered wrongs in the form of a pattern and practice of employment discrimination perpetrated by Defendants.

269.    Plaintiff has suffered and will continue to suffer irreparable harm in the form of lost employment opportunities via employment discrimination by Defendants based on Plaintiff's sincerely held religious beliefs and will continue to suffer irreparable injury such as loss of monetary and fringe benefits in addition to the aforementioned emotional distress and anguish Plaintiff has suffered and continues to suffer because of these denied employment opportunities.

270.    Plaintiff suffered and will continue to suffer irreparable harm in the form of lost employment opportunities as a result of the employment discrimination by Defendants in the manner set forth herein.

271.    The request for an injunction is not adverse to the public interest because it will bring Defendants into compliance with applicable laws, policies, and regulations governing prevention of employment discrimination and will increase fairness in treatment of religious minorities such as Jews as applicants for employment and as employees.

272.    Plaintiff has a substantial likelihood for success on the merits given the admissions of discriminatory behavior against Plaintiff based on religion by multiple Defendants and one witness.

273.    Defendants should be required to account for other Jewish applicants and provide appropriate relief, including but not limited to, notification to those applicants that they have been discriminated against.

274.    Defendants should be required to specifically remediate their conduct and failures to act with respect to Jewish applicants and potential Jewish applicants, and to offer reasonable accommodation and non-discriminatory treatment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in his favor, award him seniority, back pay, and benefits retroactive to the earliest date the first selectee was hired, award him damages for lost wages and benefits, lost future wages and benefits, declaratory and injunctive relief, attorney's fees and costs, pre-judgment and post-judgment interest on damages, fees, and costs, changes made to the selection process in order to prevent the alleged discriminatory conduct from recurring in other situations and against other applicants/employees, and any other such relief as is permitted by law.

Respectfully submitted,

RIEDERS, TRAVIS, DOHRMANN, MOWREY, HUMPHREY & WATERS

By: /s/ Clifford A. Rieders, Esq.
PA Attorney ID #20962
161 West 3rd Street
Williamsport, PA 17701
Phone: 570-323-8711
Fax: 570-323-4192
Email: crieders@riederstravis.com