**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JEFFREY PODELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-1025-TSE-JFA |
| | ) | |
| LLOYD J. AUSTIN, Secretary of Defense, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

Defendant Lloyd J. Austin, Secretary of the United States Department of Defense, and various other federal Defendants, all named in their official capacities, respectfully submit this memorandum in support of their motion to dismiss the Second Amended Complaint in the above-captioned action.

## I.  <u>INTRODUCTION</u>

In 2021, Plaintiff Jeffrey Podell applied to four police officer positions at the National Geospatial-Intelligence Agency ("NGA")—two in Springfield, Virginia, and two in St. Louis, Missouri.  As a part of the NGA's hiring process for its police officer positions, Plaintiff was invited to a pre-employment processing event in Springfield, which the NGA customarily holds on Saturdays.  Plaintiff informed NGA that he could not attend any event on a Saturday because, as a part of his Jewish faith, he observes the Sabbath on Saturdays.  Plaintiff requested alternative days of the week to attend the pre-employment processing event, but was informed by NGA that it only holds these events on Saturdays.  Ultimately, Plaintiff did not attend any of the pre-employment events to which he was invited and was not selected for any of the four positions.

Plaintiff eventually filed suit in the United States District Court for the Eastern District of Pennsylvania, asserting a host of claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the United States Constitution, and the Religious Freedom Restoration Act ("RFRA"). Because venue was not proper in that district under Title VII's exclusive venue provision, the suit was transferred here, where Plaintiff's Second Amended Complaint is the operative pleading.  For the following reasons, Counts 2 through 7 of the Second Amended Complaint are subject to dismissal with prejudice.

At its core, Plaintiff's suit centers on the NGA's purported failure to accommodate—and interference with—his religious beliefs.  Defendants concede that the allegations in the Second Amended Complaint are likely sufficient to state claims for disparate treatment failure-to-accommodate under Title VII and interference with Plaintiff's religious practices under RFRA at this preliminary stage.  Nevertheless, much of the Second Amended Complaint is devoted toward pigeonholing these allegations into a host of alternative theories of liability under which Plaintiff's allegations do not state a claim upon which relief can be granted.

For example, Plaintiff also asserts claims for retaliation, hostile work environment, and disparate impact under Title VII.  With respect to the retaliation claim, Plaintiff was informed *before* he engaged in any statutorily-protected activity that the NGA holds the pre-employment processing events in question on Saturdays, regardless of any extraneous circumstances.  Thus, Plaintiff cannot argue that the NGA decided to hold these events on Saturday because of his statutorily-protected activity.  Moreover, Plaintiff cannot state a viable retaliation claim because requesting a religious accommodation does not constitute statutorily-protected activity under Title VII.  Finally, even if he had stated a viable retaliation claim, Plaintiff failed to exhaust this claim at the administrative level.  Accordingly, any claim for retaliation is subject to dismissal.

Plaintiff's Title VII hostile work environment claim is also fatally flawed. The conduct Plaintiff complains of comes nowhere close to being objectively severe and pervasive enough under Fourth Circuit law to support a viable hostile work environment claim. And, like his retaliation claim, Plaintiff's hostile work environment claim should also be dismissed for failure to exhaust, as it appears nowhere in his administrative complaints of discrimination.

Likewise, Plaintiff has not stated a viable disparate impact claim because he has not cited to any statistical disparities in NGA's workforce that would support his allegation that Jews are disproportionately affected by the particular aspect of NGA's hiring process he challenges. Without any statistical data, Plaintiff asks the Court to simply assume that the Saturday pre-employment processing events have a disparate impact on Sabbath-observant Jews without any demonstrable support.

In addition, Plaintiff has failed to exhaust a substantial portion of his disparate treatment claims, making those allegations not timely exhausted subject to dismissal under Title VII's administrative exhaustion requirement.

Finally, all of Plaintiff's constitutional claims and all claims against any Defendants other than Secretary Austin are also subject to dismissal. As Title VII is the exclusive right of action for any federal employee or applicant alleging employment discrimination, it preempts any constitutional claims. Further, it is well established that Title VII claims are only proper against the head of the relevant federal agency. And the Second Amended Complaint is without any remaining claims that can be maintained against the other Defendants.[1]

---

[1] Even if any claim—for example, Plaintiff's RFRA claim—could be maintained against an individual defendant, Plaintiff has named each Defendant in their official capacities only. Because official-capacity claims are akin to claims against the agency itself, any such claim should be dismissed as duplicative.

3

## II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND[2]

Plaintiff Jeffrey Podell, a resident of Pennsylvania, practices Judaism.  Dkt. 21, ¶ 1.  On April 23, 2021, Plaintiff applied to four police officer positions at the NGA's locations in Springfield, Virginia, and St. Louis, Missouri.  Dkt. 21, ¶ 39.  On June 9, 2021, NGA invited Plaintiff by email to attend a pre-employment processing event—the first phase of pre-employment processing in NGA's hiring process.  Dkt. 21, ¶ 40.  On June 16, Plaintiff replied that he could not attend the event because it was scheduled on a Saturday and he is a Sabbath-observant Jew.  Dkt. 21, ¶ 41–42.  Plaintiff also inquired about alternate testing dates and times.  Dkt. 21, ¶ 42.  On June 20, Wesley Lee Jordan, an NGA police management official, informed Plaintiff by email that there were no alternative dates for the pre-employment processing event and invited him to reapply in several months' time.  Dkt. 21, ¶ 43.

On June 28, 2021, NGA emailed Plaintiff inviting him to participate in the first phase of pre-employment processing for its police officer position in Springfield, Virginia, on July 17, 2021.  Dkt. 21, ¶ 44.  Plaintiff was unable to attend this event because it was again on a Saturday, and so informed NGA in a July 11, 2021 email.  Dkt. 21, ¶ 44–45.  On July 14, NGA replied that it would only have pre-employment processing events on Saturdays and would consult Human Resources ("HR") about alternative dates, while reiterating its invitation to Plaintiff for the July 17, 2021 event.  Dkt. 21, ¶ 46.  On August 20, NGA emailed Plaintiff to invite him to a pre-employment processing event on September 18, 2021, in Springfield.  Dkt. 21, ¶ 47.  The same day, Plaintiff replied that he was unable to attend because it took place on a Saturday, reiterated

---

[2] All relevant factual allegations are derived from Plaintiff's Second Amended Complaint. Defendants focus primarily on the facts relevant to this motion without admitting the truth of any of Plaintiff's allegations at this stage of the proceedings.  Defendants reserve the right to challenge Plaintiff's version of the facts should it ultimately become necessary.  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

that he is a Sabbath-observant Jew, and requested an alternative testing date that did not take place either on a Saturday or a Jewish holiday.  Dkt. 21, ¶ 48.

On September 9, 2021, NGA informed Plaintiff that it was only conducting pre-employment processing events on Saturdays in 2021 and "wished Plaintiff luck in his future endeavors."  Dkt. 21, ¶ 49.  On September 28, NGA emailed Plaintiff and informed him that it had reviewed his applications for the two Springfield police officer positions to which he applied, that he was not selected, "and due to the volume of email traffic, Defendant could not go into further detail about the reasons for non-selection."  Dkt. 21, ¶ 50.

On October 4 and 8, 2021, Plaintiff called NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity ("EEO Office") and left voicemails.  Dkt. 21, ¶ 51–52.  On October 12, Plaintiff sent a written complaint to NGA, chronicling the "events leading up to initiating the complaint process, examples of how his religious beliefs were accommodated in the past, and examples of how other government employers have accommodated requests for alternative scheduling based on an applicant's/employee's religious beliefs to show how Plaintiff's request accommodations were reasonable and not an undue hardship for Defendants."  Dkt. 21, ¶ 53.  On October 26, EEO Intake Specialist David Coleman had an initial call with Plaintiff to begin the informal resolution process.  Dkt. 21, ¶ 54.  Plaintiff filed an informal complaint, which was assigned to the EEO Office's Kelly Thomas.  Dkt. 21, ¶ 56.

As a part of his investigation, Coleman interviewed a number of NGA managers.  Jordan explained that he did not consult with anyone about Plaintiff's requests and that he denied Plaintiff's request to move the pre-employment processing event for the St. Louis positions to a day other than Saturday.  Dkt. 21, ¶ 58.  Jason Tinnin, Jordan's first-line supervisor, explained that he had delegated the hiring decisions for the St. Louis positions to Jordan.  Dkt. 21, ¶ 59.  Marcus

Dwayne Jackson, hiring manager for the Springfield vacancies, offered that he was aware of a religious accommodation practice for employees but not one for applicants. Dkt. 21, ¶ 60. He stated that either he or someone else wrote the emails from the NGA account to Plaintiff but could not specifically recall, and did not recall speaking with HR about Plaintiff's requests. Dkt. 21, ¶ 60. "He acknowledged creating the perception that Plaintiff was unwelcome as an applicant or employee due to applicant's religious beliefs." Dkt. 21, ¶ 60. Jackson explained that NGA pre-employment processing events always occurred on Saturdays in his experience. Dkt. 21, ¶ 61. Jackson stated that if Plaintiff were hired, he could work a Monday-through-Friday shift. Dkt. 21, ¶ 62. Coleman also interviewed Mark Jackowski, NGA's Reasonable Accommodation Program Manager, who stated that if a reasonable accommodation does not impose an undue hardship on the agency, it is required to grant the request. Dkt. 21, ¶ 63.

Jordan explained during the administrative complaint process that holding the event on a day other than Saturday would cause undue hardship because "the initial screening has multiple events, has trained proctors for the physical fitness testing, the event required multiple officers and some of them were there on special assignment, increased monetary costs for staffing the events, and that one event is offered per hiring cycle for those reasons." Dkt. 21, ¶ 92. Jordan stated that "every request for alternative testing accommodation is denied," Dkt. 21, ¶ 100, including when individuals cannot attend on a Saturday due to military deployments, other employment, or family commitments. Dkt. 21, ¶ 113. Tinnin confirmed that he has received requests to reschedule the events and "did not grant them." Dkt. 21, ¶ 114.

On January 10, 2022, Plaintiff filed a formal complaint of discrimination with the NGA's EEO Office. Dkt. 21, ¶ 65; *see also* Exhibit 1, "Complaint of Discrimination in the Federal Government." In the formal complaint, Plaintiff checked the box for "religion" under "why you

6

believe you were discriminated against." Ex. 1, at 1.  He did not check any other boxes.  The formal complaint includes a factual narrative followed by the statement "I believe I was discriminated against on the basis of religion (Jewish) in violation of Title VII of the Civil Rights Act of 1964, as amended." Ex. 1, at 4–6.

Before this Court, Plaintiff seeks to assert 10 discrete causes of action: (1) Title VII disparate treatment; (2) Title VII disparate impact; (3) Title VII retaliation; (4) violation of the 5th and 14th Amendments' Due Process Clause; (5) violation of the 5th Amendment's Equal Protection Clause; (6) violation of the First Amendment's Free Exercise Clause; (7) Title VII hostile work environment; (8) Religious Freedom Restoration Act; (9) declaratory relief; and (10) injunctive relief.  Dkt. 21, ¶¶ 199–289.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of the complaint.  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, the Court should "assume the facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's] favor." *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).  The Court, however, is not required to accept legal conclusions as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted.  *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

A complaint should be dismissed for failure to state a claim upon which relief may be granted if the plaintiff fails to meet his obligation to provide the grounds for entitlement to relief. *Twombly*, 550 U.S. at 555.  This requires "'more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action.'" *Id.* "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; rather, the plaintiff must allege facts that are sufficient "to state a claim to relief that is *plausible on its face.*" *Twombly*, 550 U.S. at 555, 570 (emphasis added). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (cleaned up).

## IV.  ARGUMENT

### A.  Disparate Impact

#### *1.  Failure to State a Claim*

In Count 2, Plaintiff alleges that the NGA committed disparate impact discrimination under Title VII "by intentionally discriminating against Plaintiff based on religion and employing a selection method that perpetuates discrimination against Sabbath observant Jews . . . ." Dkt. 21, ¶ 234. In addition to constituting a mere repackaging of his disparate treatment claim, Plaintiff's disparate impact claim fails to plead the factual predicate necessary to support a viable cause of action. "While disparate treatment claims focus on an employer's discriminatory intent, disparate impact claims focus on employment practices that produce discriminatory results." *Medeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 416 (W.D. Va. 2020). "To establish a prima facie case of disparate impact discrimination under Title VII, a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005).

First, the plaintiff must identify the specific employment practice he is challenging.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357 (2011) (internal quotation marks omitted).  Then, he "must allege either the existence of numerical or statistical evidence demonstrating disparate impact or sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that the employment practice has a discriminatory impact on the protected group."  *Medeiros*, 434 F. Supp. 3d at 416 (cleaned up).  And the plaintiff must allege that the challenged policy is the cause of the alleged disparity.  *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990).

Plaintiff has done neither here.  To the extent he alleges that the NGA's decision to hold its 2021 pre-employment processing events on Saturdays has had a significantly discriminatory impact on Jewish people, he has failed to allege any facts plausibly suggesting that "the above-mentioned practices caused a disparate impact" on those who practice the Jewish faith.  *Anderson*, 406 F.3d at 266.  And Plaintiff has not alleged "sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that the employment practice has a discriminatory impact on the protected group."  *Medeiros*, 434 F. Supp. 3d at 416.  At most, Plaintiff has alleged that the *four* police officer positions to which he applied in April 2021 all had pre-employment processing events on Saturdays.  In fact, Plaintiff even alleged that Jordan invited him to "reapply in a number of months" when informed by Plaintiff that he could not attend on Saturdays due to his faith, suggesting the possibility that future events may be held on a different day of the week.  *See* Dkt. 21, ¶¶ 41–43.  Later, Plaintiff alleged that the NGA stated it "was only doing testing for the Police Officer position on Saturdays in 2021 . . . ."  Dkt. 21, ¶ 49. And the only pre-employment processing events to which Plaintiff alleged he

was invited were in June, July, and September 2021.[3]   Accordingly, Plaintiff has failed to plead any facts from which the Court can plausibly infer that the NGA's hiring practices have had a disparate impact on Jewish applicants in violation of Title VII.

### 2. *Failure to Exhaust Administrative Remedies*

In any event, Plaintiff cannot assert a disparate impact claim at this stage because he failed to include any such claim during the administrative proceedings.   His informal and formal complaints raise discrete claims based on four instances of failure to make a religious accommodation and failure to hire him as an NGA police officer.[4]   *See* Exs. 1 & 2, "EEO Complaint of Jeffrey Podell."   Nowhere in these complaints or their corresponding factual narratives does Plaintiff specifically argue that the NGA's hiring practices have a disparate impact of Jewish people.   Rather, he *only* complains about the NGA's failure to accommodate his specific requests and failure to ultimately hire him.   Accordingly, Plaintiff has failed to successfully exhaust his administrative remedies with respect to any purported disparate impact claim.   *See, e.g.*, *Earl v. Norfolk State Univ.*, 2014 WL 2916718, at *12 (E.D. Va. June 26, 2014) (dismissing disparate impact claim for failure to exhaust where the plaintiff focused only on the treatment he

---

[3] Plaintiff never actually identifies the month of the first event to which he was invited, but his factual allegations suggest that the event (to the extent it existed) would have been in June 2021. *See* Dkt. 21, ¶¶ 40–45.

[4] The Court may consider Plaintiff's EEO complaints in adjudicating this motion because Plaintiff incorporated them into his Second Amended Complaint and cannot question their authenticity. *See* Dkt. 21, ¶¶ 54, 56, 65 (repeated references to Plaintiff's EEO complaints); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Indeed, in the context of employment discrimination cases, courts frequently consider administrative documents, such as EEO charges, when disposing of Rule 12(b)(6) motions. *See, e.g., Mustafa v. Iancu*, 313 F. Supp. 3d 684, 687 (E.D. Va. 2018); *Davis v. Navy Fed. Credit Union*, No. 1:11-cv-01282, 2012 WL 73233, at *3 (E.D. Va. Jan. 10, 2012); *Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 618 n.3 (E.D. Va. 2011).

received and did not include allegations that any policy affected one group more harshly than another).

## B.     Retaliation

### 1.     *Failure to State a Claim*

The elements of a prima facie retaliation claim are "(1) engagement in a protected activity; (2) adverse [personnel] action; and (3) a causal link between the protected activity and the [personnel] action." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  While a plaintiff is not necessarily required to allege a prima facie case of retaliation to survive a motion to dismiss, he must still allege sufficient facts to make such a claim plausible.  *See Salagh v. Va. Int'l Univ.*, 2017 WL 976620, at *4 (E.D. Va. Mar. 13, 2017).  This requires that an employee allege that he suffered an adverse personnel action and a causal connection exists between the plaintiff's protected activity and the adverse action.  *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015); *see also Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). The causation requirement for retaliation claims is a stringent one, and courts in this circuit routinely dismiss such claims for a lack of factual allegations plausibly demonstrating a causal connection.  *See, e.g.*, *Adkins v. Fairfax Cnty. Sch. Bd.*, 2008 WL 2076654, at *6 (E.D. Va. May 15, 2008) (collecting cases).

Plaintiff's retaliation claim fails for two clear reasons.  First, Plaintiff's requests to reschedule the pre-employment processing events to a different day of the week do not constitute statutorily-protected activity under Title VII.  *See, e.g.*, *Johnson v. United Parcel Serv., Inc.*, 2020 WL 779459, at *6 n.9 (D. Md. Feb. 14, 2020) ("A mere request for accommodation is not a protected activity under Title VII."), *aff'd*, 839 F. App'x 781 (4th Cir. 2021); *Touvian v. Dist. of Columbia*, 330 F. Supp. 3d 246, 251 n.3 (D.D.C. 2018) (noting that "merely requesting a religious

accommodation is insufficient for Title VII retaliation claims"); *Pearlman v. Mayor and City Council of Balt.*, 2016 640772, at *6 (D. Md. Feb. 18, 2016) (same).  Indeed, this line of case law accords with the text of the statue itself, which prohibits discrimination "against any . . . employees or applicants for employment . . . because he has *opposed any practice* made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3.[5]

By the time the NGA had made the ultimate decision not to hire Plaintiff in September 2021, he had not opposed any unlawful employment practice or "made a charge, testified, assisted, or participated . . . in an investigation, proceeding, or hearing."  42 U.S.C. § 2000e-3.  Plaintiff does not allege that when he asked the NGA to reschedule its pre-employment processing events, citing his religious beliefs, he ever *complained* about the policy itself or opposed it in any way.  And he alleges that he only engaged in actual EEO activity *after* he was notified of his non-selection, beginning on October 2021, when he called the NGA EEO Office twice and left voicemails.  *See* Dkt. 21, ¶¶ 51–52.  Thus Plaintiff's EEO activity provides no basis for a retaliation claim. *See, e.g.*, *Green v. Sessions*, 2018 WL 2025299, at *12 (E.D. Va. May 1, 2018) (dismissing retaliation claim, where the plaintiff's EEO activity post-dated his placement on a performance improvement pan, and citing cases); *Tweed v. Sessions*, 2018 WL 3468367, at *8 (E.D. Va. July 18, 2018) (same, where the plaintiff's protected activity occurred after the subject investigation already had begun), *aff'd*, 745 F. App'x 499 (4th Cir. 2018); *Washington v. N.Y.C. Dep't of Educ.*, 2017 WL 4687982, at *11–12 (S.D.N.Y. Oct. 16, 2017) (same, "where the termination was both

---

[5] Title VII's private-sector antiretaliation provision is "incorporated by the federal-sector provision."  *Laurent-Workman v. Wormuth*, 54 F. 4th 201, 212 (4th Cir. 2022).

part, and the ultimate product of, an extensive period of progressive discipline which began prior to the filing of the EEOC charges" (alterations omitted)).  Accordingly, Plaintiff has not plausibly alleged any statutorily-protected activity on which to base his retaliation claim, and any such claim must necessarily fail for this reason alone.

Moreover, Plaintiff appears to argue that he was "retaliated" against because, whenever he requested a religious accommodation, that request was denied.  But Plaintiff has not alleged any facts from which the Court could plausibly infer a causal inference between Plaintiff's requests and the NGA's refusal to grant them.  Indeed, the NGA's decision to hold its 2021 pre-employment processing events on Saturdays *preceded* Plaintiff's first request for an accommodation.  If Plaintiff's argument were to prevail, *any* failure-to-accommodate claim could also constitute a retaliation claim where a plaintiff claims that an employer or potential employer's failure to accommodate their particular request constituted retaliation *in addition to* disparate treatment.  *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned [decisions] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

By the time Plaintiff requested a religious accommodation, NGA's decision to hold its pre-employment processing events in 2021 on Saturdays had already been made, making causation impossible.  As another Court in this district has noted, "[c]ommon sense provides that one cannot retaliate against an employee for engaging in a protected activity until the employee actually engages in the protected activity. The law shares this intuitive approach."  *Hill v. Panetta*, 2012 WL 12871178, at *17 (E.D. Va. Oct. 4, 2012); *see also Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) ("Retaliatory conduct, by its very nature, must come *after the*

protected activity."). Accordingly, without causation, the NGA's denial of Plaintiff's requests for religious accommodation cannot form the basis of any retaliation claim.

### 2. *Failure to Exhaust Administrative Remedies*

Plaintiff's retaliation claim should also be dismissed with prejudice for failure to exhaust. Nowhere in Plaintiff's informal or formal EEO complaints is there any mention of retaliation. *See generally* Exs. 1 & 2. Indeed, on the formal complaint, Plaintiff failed to check the box next to "retaliation" for the basis of the discrimination he was seeking to redress. *See* Ex. 1, at 1. Accordingly, such claim is barred because his EEO complaint completely omitted any mention of retaliation. *Walton v. Harker*, 33 F. 4th 165, 174–75 (holding where a plaintiff fails to raise claims in the administrative phrase and thus fails to properly exhaust, he "is procedurally barred from pursuing those allegations"); *see also Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996).

Further, Plaintiff's failure to exhaust his retaliation claim cannot be salvaged by the retaliation "exception" to the general rule of administrative exhaustion. The Fourth Circuit has held that "a plaintiff may raise the retaliation claim for the first time in federal court." *Nealon v. Stone*, 958 F.3d 584, 590 (4th Cir. 1992); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 302 (4th Cir. 2009). "[R]etaliation for the *filing of an EEOC charge* as discrimination is indeed like or reasonably related to and growing out of the allegations contained in that charge." *Jones*, 551 F.3d at 302 (citations and internal quotation marks omitted) (emphasis added). "[P]ractical concerns" supported the Fourth Circuit's holding in *Nealon* and *Jones* "in that a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge, possibly bringing about further retaliation." *Id.* These "practical concerns" are not present here, when the purportedly retaliatory acts (failure to accommodate and non-

selection) occurred *before* Plaintiff contacted the EEO office.  Plaintiff could have—and should have—brought his retaliation claim to the agency's attention during the administrative phase. Where, as here, the alleged retaliation predates the EEOC contact, "the normal rules of exhaustion must apply."  *Battle v. Burwell*, 2016 WL 4993294, *5 (D. Md. Sept. 19, 2016) (stating "if a plaintiff faces retaliation and *then* chooses to file an EEOC complaint, there is little reason not to require her to exhaust her retaliation claim by including it in her EEOC charge.") (emphasis in original) (citations and internal quotation marks omitted).  Accordingly, even if Plaintiff's retaliation claim stated a claim upon which relief could be granted, it would be subject to dismissal for failure to exhaust administrative remedies.

## C.     Hostile Work Environment

Plaintiff's claim that he was subjected to a hostile work environment is also subject to dismissal on several bases, the most simple and fundamental of which being that he was never actually employed by NGA.  Title VII's federal-sector provision requires that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. (§) 2000e-16(a).  It is axiomatic, then, that a non-employee cannot bring a hostile work environment claim under Title VII.  *See, e.g.*, *Jones v. Montachusett Reg'l Transit Auth.*, 525 F. Supp. 3d 256, 258 (D. Mass. 2021) (observing that, if plaintiff is not an employee of the defendant, his hostile work environment claim must be dismissed); *Khaksari v. Chairman, Broad. Bd. of Governors*, 451 F. App'x 1, 4 (D.C. Cir. 2011) (plaintiff was "not an 'employee' and therefore lacks standing to complain . . . of a hostile work

environment"); *Stockley v. Darby Borough*, 2011 WL 665800, at *3 (E.D. Pa. Feb. 23, 2011) (lack of employment relationship precludes Title VII hostile work environment liability).

In any event, even if Plaintiff were an employee of NGA, he has not alleged facts even approaching the standard required to support a viable Title VII hostile work environment claim. To state a hostile work environment claim, a plaintiff must plausibly allege that the harassment "was (1) unwelcome, (2) based on his protected characteristic, such as race, national origin, or religion, (3) sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere, and (4) imputable to the defendant." *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018) (cleaned up). Plaintiff claims he was subjected to a hostile work environment based on the fact that NGA denied his requests for religious accommodation and that he felt "unwelcome by the Defendants," Dkt. 21, ¶ 265, and that "[a]t least one Defendant employee admitted . . . to making Plaintiff feel unwelcome at Defendant NGA Police on the basis of Plaintiff's sincerely held religious beliefs." Dkt. 21, ¶ 267.

These allegations are neither remotely sufficiently severe nor pervasive to state a claim. In considering whether conduct is objectively severe or pervasive, this Court should look to, among other factors, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli v. City of Balt.*, 648 F.2d 216, 222 (4th Cir. 2011). A plaintiff "must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). As the Fourth Circuit has admonished, "complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor,

are not actionable under Title VII." *Id.* At 315–16 (cleaned up).  In short, "[t]he harassment must be extreme." *Wells v. Gates*, 336 F. App'x 378, 388 (4th Cir. 2009).

The allegations that Plaintiff was denied certain requests and "made to feel unwelcome," supported by nothing other than threadbare recitals of the elements of a hostile work environment claim, come nowhere close to the requisite level of pervasiveness or severity to constitute a hostile work environment.  Cases with conduct far more severe and pervasive are regularly dismissed in this circuit.  Indeed, the Fourth Circuit has affirmed dismissal of a claim in which a supervisor "mockingly" yelled at the plaintiff in a meeting, "yell[ed] and pound[ed] her hands on her desk during another meeting," "repeatedly harp[ed] on a mistake" by the plaintiff, "ma[de] snide comments" to the plaintiff, "play[ed] favorites with employees and pitt[ed] employees against each other," and "unfairly scrutinize[d] and criticiz[ed]" plaintiff's use of leave and lack of compliance with directives. *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013); *see also Hill v. Panetta*, 2012 WL 12871178, at *9 (E.D. Va. Oct. 4, 2012), *aff'd sub nom. Hill v. Hagel*, 561 F. App'x 264 (4th Cir. 2014) (holding that allegations of yelling, excessive criticism, rudeness, and verbal abuse were insufficient to state a hostile work environment claim); *Hartsell*, 123 F.3d at 772 (holding that numerous comments such as "we've made every female in the office cry like a baby" and "fetch your husband's slippers like a good little wife," and references to employees as "slaves" and "little people" were not sufficiently severe to state a hostile work environment claim).  Accordingly, Plaintiff's hostile work environment is, like many of the extraneous claims, subject to dismissal on several bases.[6]

---

[6] Plaintiff's hostile work environment claim should also be dismissed with prejudice for failure to exhaust.  Nowhere in Plaintiff's formal or informal EEO complaints does he allege that the conduct he complained of resulted in a hostile work environment (nor could he, because he never worked at NGA). *See generally* Exs. 1 & 2.  Accordingly, such claim is barred because his EEO complaints did not raise that issue at all. *See, e.g.*, *Walton*, 2022 WL 1257128, at *6 (holding where a plaintiff

**D.   Disparate Treatment Claims**

Much of Plaintiff's disparate treatment claims are not exhausted due to Plaintiff's failure to timely contact the EEO.  Plaintiff's claims of disparate treatment with regard to any conduct before August 20, 2021, at the very latest, are not properly exhausted and thus should be dismissed.

For any claim of discrimination to be properly exhausted, the underlying challenged action must have been brought to the attention of an EEO counselor within 45 days of the action. *See* 29 C.F.R. § 1614.105(a); *see also Guerrero v. Lynch*, 621 F. App'x 755, 756 (4th Cir. 2015) (per curiam).  This requirement ensures that claims are promptly investigated while the facts and memories are still fresh.  *See Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012).  Here, Plaintiff alleges that his first EEO contact was, at the very earliest, October 4, 2021.[7]  Thus, any discrete actions occurring before August 20, 2021 (*i.e.*, 45 days) are time-barred.  *See id*; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (noting that for purposes of, *inter alia*, timely exhaustion, each alleged "incident of discrimination" stands alone).  Other than Plaintiff's non-selection for two police officer positions he applied to in Springfield, Virginia on September 28, 2021, and an email Plaintiff received on September 9, 2021 stating NGA was only doing testing for the police officer position on Saturdays in 2021, *see* Dkt. 21 ¶ 49-50, each of the discrete actions alleged within his Amended Complaint—to the extent they are cognizable adverse actions—were not timely raised administratively because they occurred long before August 20, 2021.  This includes requests for accommodation and denials of those requests from NGA going back to June 2021.  *See* Dkt. 21 ¶ 43-46.

---

fails to raise claims in the administrative phrase and thus fails to properly exhaust, he "is procedurally barred from pursuing those allegations").

[7] Plaintiff alleges he attempted to call NGA's EEO office on October 4, 2021.  Dkt. 21, ¶ 51. However, Plaintiff submitted his informal EEO Complaint on October 12, 2021.  Dkt. 21, ¶ 53.

Plaintiff's Second Amended Complaint offers no plausible explanation for why he failed to timely bring these matters to the attention of an EEO counselor. *Guillen v. Esper*, 2020 WL 3965007, at *15 (E.D. Va. July 13, 2020) (internal quotation marks and citation omitted). Moreover, although Plaintiff claims he applied to *four* police officer positions, two in Missouri and two in Virginia, he only states in his Second Amended Complaint that he was informed of his non-selection for the two positions in Virginia. *See* Dkt. 21 ¶ 50.  Thus, Plaintiff entirely omits when an adverse event related to the two Missouri positions could have taken place.  This is crucial, as "[t]he Fourth Circuit has made clear that a complaint cannot survive a motion to dismiss if it requires a court to 'fill in the gaps' as to the basis for the alleged discriminatory behavior." *Guillen*, 2020 WL 3965007, at *14 (quoting *Bing v. Brivo Sys., LLC,* 959 F.3d 605, 618 (4th Cir. 2020)). And as another jurist in this Court has noted, "[t]his lack of clarity [with regard to dates] would be troublesome in any complaint, but it is particularly problematic" where the viability of the claim relies on the "clear chronology of events." *Guillen*, 2020 WL 3965007, at *1.

Thus, any discrete-act claims before August 20, 2021 are irreparably barred and should be dismissed with prejudice, pursuant to Rule 12(b)(6).  *See Saunders v. Stone*, 758 F. Supp. 1143, 1145 (E.D. Va. 1991), *aff'd*, 948 F.2d 1282 (4th Cir. 1991).

### E.    Constitutional Claims

In *Brown* v. *General Services Administration*, 425 U.S. 820, 829 (1976), the Supreme Court held that Title VII's comprehensive remedial scheme provides the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *See also Bullock v. Napolitano*, 666 F.3d 281, 283 (4th Cir. 2012) ("Title VII creates the 'exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.'") (quoting *Brown*, 425 U.S. at 829).   Under *Brown,* Plaintiff's claims of

constitutional violations based on the same allegations underpinning his Title VII claims are therefore preempted by Title VII. *See, e.g.*, *Conway v. Pompeo*, 2018 WL 8800525, at *6 (E.D. Va. Sept. 17, 2018) (constitutional claims are preempted by Title VII and subject to dismissal). Accordingly, Counts 4 (Due Process Clause), 5 (Equal Protection Clause), and 6 (Free Exercise Clause) are subject to dismissal with prejudice.[8]

## F.    Official-Capacity Claims Against Defendants Other than Secretary Austin

Plaintiff sues each of the Defendants in their official capacities. *See* Dkt. 21, 3–4 & 8–14. Of course, Title VII claims are only properly brought against the head of the agency in question. *See, e.g.*, *King v. Dalton*, 895 F. Supp. 831, 844 (E.D. Va. 1995). As for Plaintiff's remaining RFRA claim, for which Defendants have not moved for dismissal (or any other claim that may survive), Plaintiff's claims against the Defendants in their official capacities are duplicative of claims against the agency itself, and therefore subject to dismissal. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, all claims against the Defendants other than Secretary Austin should be dismissed with prejudice. *See, e.g.*, *Turner v. Supreme Ct. of Va.*, 2019 WL 13297449, at *3 (E.D. Va. Feb. 20, 2019) (dismissing claims against individually-named defendants in their official capacities).

## V.  <u>CONCLUSION</u>

Given the multiple bases on which Plaintiff's claims fail, the Court should dismiss with prejudice Counts Two through Seven of Plaintiff's Second Amended Complaint.

---

[8] The Second Amended Complaint includes requests for declaratory and injunctive relief as Counts 9 and 10. Defendants construe these "Counts" as the relief requested, not independent causes of action. The Court need not address the requested relief at this time.

Dated: August 17, 2023

Respectfully submitted,

JESSICA D. ABER
United States Attorney

By: _____/s/_____
ROBERT C. PICKREN
ELIZABETH A. SPAVINS
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3745/85
Fax:    (703) 299-3983
Email:  lizzie.spavins@usdoj.gov
          cooper.pickren@usdoj.gov

*Counsel for Defendants*