**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

JEFFREY PODELL,                  )

                               )

            Plaintiff,         )

                               )

      v.                         )     Case No. 1:23-cv-1025-TSE-JFA

                               )

                               )

LLOYD J. AUSTIN, Secretary of Defense, *et*  )

*al.*,                            )

                               )

           Defendants.     )

_____)

## PLAINTIFF'S CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

1. Procedural History…………………………………………………....1

2. Factual Background……………………………………………………..2

3. Standard for a Motion to Dismiss……………………………………....6

4. Argument on the Counts…………………………………………………7

       Disparate Impact………………………………………………....7

      1.  Failure to State a Claim……………………………………7
      2.  Exhaustion of Administrative Remedies……………………………..10

  A.  Retaliation…………………………………………………………13
  B.  Hostile Work Environment……………………………………….....13
  C.  Disparate Treatment Claims……………………………………...…13

      1.  No Notification of Awareness of Time Limits……………………....13
      2.  Circumstances Preventing Mr. Podell from Contacting the
         EEO Outside His Control……………………………………………14

  D.  Constitutional Claims……………………………………………....15

  E.  Official Capacity Claims Against Defendants Other Than Secretary
     Austin………………………………………………………………....22

5. Conclusion……………………………………………………...……27

**TABLE OF AUTHORITIES**

**CASES:**

Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974)…………………………..…..…..17-18

Allen v. Becerra, 2022 U.S. Dist. LEXIS 21989, 2022 WL 374409 (2022)……..….…..17

Ashcroft v. Iqbal, 566 U.S. 622, 678 (2009)…………………………………..…….…..…1, 6

Bolling v. Sharpe, 347 U.S. 497, 74 S. Ct. 693 (1954)……………………………18, 19, 20

Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir)……………………….………...6

Bostock v. Clayton County…………………………………………………….……………..17

Brown v. General Services Administration, 425 U.S. 820 (1976).....................15, 16, 18, 21

Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002)…………….…………..11

Bullock v. Napolitano, 666 F.3d 281 (4th Co. 2012)…………………….................20, 21

Connecticut v. Teal, 457 U.S. 440, 446-47 (1982)……………………………..……..10

Conway v. Pompeo, 2018 U.S. Dist. LEXIS 231670……………………….………….21

Davis v. Navy Fed. Credit Union, No. 1:11-cv-01282, 2012 WL 73233 (E.D. Va. Jan. 10, 2022)………………………………………………………………………………………...12

Earl v. Norfolk State Univ. 2014 WL 2916718 (E.D. Va. June 26, 2014)…………………11

Edwards v. City of Goldsboro 178 F.3d 231, 244 (4th Cir. 1999)……………………………7

Edwards v. Murphy-Brown, LLC, 760 F. Supp. 2d 607, 618 (E.D. Va. 2011)………………12

Griggs v. Duke Power Co., 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849, (1971) …………10

Groff v. Dejoy, No. 22-174, 2023 WL 4239256 (U.S. 29, 2023) …………………………… 9, 17

Harrison v. United States Postal Serv., 840 F.2d 1149, 1152 (4th Cir. 1988) ………………… 7

Henley v. Brown, 686 F. 3d 634, 638 (8th Cir. 2012) …………………………………17, 18, 19

Jakubiak v. Perry 101 F.3d 23, 27 (4th Cir.1996) ……………………………………………… 14

Jett v. Dallas Indep Sch. Dist. 491 U.S. 701, 734 (1989) …………………………… 15, 16

Johnson v. Railway Express Agency, 451 U.S. 454, 459 (1975) …………………..................... 18

Jones v. Virginia Polytechnic Institute and State University, No. 7:17-cv-531, 2018 U.S. Dist. LEXIS 163753, 2018 WL 4604563 (W.D. Va. 2018) ……………….. ………………………. 9

Kentucky v. Graham, 473 U.S. 159, 166 (1985) …………………………………… 22, 24, 25

King v. Dalton, 895 F.Supp. 831, 844 (E.D. Pa. 1995) …………………..................... 23, 24

Medeiros v. Walmart, Inc., 434 F. Supp. 3d 395, 416 (W.D. Va. 2020) …………………….....7

McCoy v. Canterbury, No. 3:10-0368, 2010 U.S. Dist. LEXIS 134633, 2010 WL 5343298 (S.D.W. Va. Dec. 20, 2010) ……………………………………………………………………9

Mustafa v. Iancu, 313 F. Supp. 3d 684, 687 (E.D. Va. 2018) ………………………………….. 12

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4ᵗʰ Cir. 1992) ………………………… 6

Sewell v. Westat, No. RWT-16-158, 2016 U.S. Dist. LEXIS 154757, 2016 WL 6600533 (D. Md. Nov. 8, 2016) ……………………………………………….............................................. 11, 12

Stramaski v. Lawley, 44 F.4th 314 (5th Cir. 2022). Tagore v. United States, 2019 WL 2605310 (S.D. Tex. Aug 21, 2009) ………………………………………………………………………… 26

Tanzin v. Tanvir, 141 S. Ct. 486 209 L. Ed. 2d 295, 220 U.S. LEXIS 5987 (2020) ……………17

Turner v. Supreme Court of Virginia, 219 WL 13297449, at *3 (E.D. Va. Feb. 20, 2019)………25

Walls v. City of Petersburg, 895 F.2d 188, 191 (4ᵗʰ Cir. 1990) ………………………………… 10

Walters v. McMahen, 684 F.3d 435, 439 (4ᵗʰ Cir. 2012) ……………………………………… 6

Watson v. Fort Worth Bank and Trust 487 U.S. 977, 988, 108 S. Ct. 2777, 101 L.Ed. 2d 827 (1988) …………………………………………………...............................................................8

Williams v. Pa. Human Rels. Comm'n, 870 F.3d 294, 300 (3d Cir. 2017) …………………… 19

**STATUTES:**

5 U.S.C. § 7151 …………………………………………………...………18-19

Fed. R. Civ. P. 12(b)(6) ……………………………………………………..… 6, 12

42 U.S.C. §2000e-16 …………………………………………………………15, 16, 24

42 U.S.C §2000bb-1 …………………………………………………….……… 16

42 U.S.C §2000bb-3 ………………………………………………….…… 16

42 U.S.C. §1983 …………………………………………………………..… 16

42 U.S.C. §1988 …………………………………………………………… 24

29 C.F.R. 1614.105(a)(1) …………………………………………………… 13

29 C.F.R. 1614 105(a)(2) …………………………………………………… 13

Title VII of the Civil Rights Act of 1964…… 5, 7, 8, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 23, 25

Religious Freedom Restoration Act ……………………………………….…….. 2, 17

**<u>OTHER:</u>**

Exodus 31:15-17 …………………………………………………………………..…… 8

Genesis 2:2 ………………………………………………………………………………8

Cf. Alex Reed, The Title VII Amendments Act:  A Proposal, 59 Am. Bus. L.J. 339, 351 (2022)
……………………………………………………………………………………….. 16

Fifth Amendment ………………………………………………………………………19, 20

Fourteenth Amendment …………………………………………………………..…..17, 19, 20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JEFFREY PODELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-1025-TSE-JFA |
| | ) | |
| | ) | |
| LLOYD J. AUSTIN, Secretary of Defense, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S CORRECTED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Jeffrey Podell (hereinafter referred to as "Mr. Podell") respectfully opposes Defendant, Austin J. Lloyd's motion to dismiss on the grounds that Mr. Podell has provided sufficient factual matter beyond a mere possibility that his religious rights have been violated and he has been discriminated against on the basis of his religion.[1] Mr. Podell has provided a reasonable basis for the misconduct alleged by providing a variety of specific instances where the Defendant refused and/or failed to reasonably accommodate Mr. Podell during the hiring process based on his religious obligations.[2]

## I. PROCEDURAL HISTORY

Mr. Podell first filed a complaint in the Eastern District Court of Pennsylvania on or about August 30, 2022, with and through the Equal Employment Opportunity Commission (hereinafter

---

[1] *See*, *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).
[2] *See*, *Id.*

referred to as "EEOC"). After filing a complaint through the EEOC he filed a separate complaint with private counsel on or about September 1, 2022. Pl's. 2d. Am. Compl. ECF No. 21. Mr. Podell in the latter complaint alleged a violation of Title VII of the Civil Rights Act of 1964, which included claims of disparate treatment, disparate impact, retaliation and a hostile work environment based upon religious discrimination. Pl's. 2d. Am. Compl. ECF No. 21, ¶¶ 199-272. Mr. Podell included two constitutional claims, one being a violation of the Due Process Clause of the 5th and 14th Amendments, and the other being a violation of the Equal Protection Clause of the 5th Amendment. Pl's. 2d. Am. Compl. ECF No. 21, ¶¶ 254-63. Mr. Podell also included a claim that Defendant violated the Religious Freedom Restoration Act and sought declaratory and injunctive relief. Pl's. 2d. Am. Compl. ECF No. 21. Mr. Podell then filed his first amended complaint on or about December 21, 2022, from the Eastern District of Pennsylvania to the Eastern District of Virginia. ECF No. 4.

Mr. Podell then filed his second amended complaint on or about November 29, 2022, where he again provided the same violations and relief in his counts. Pl's. 2d. Am. Compl. ECF No. 21. On or about July 31, 2023, the Eastern District Court of Pennsylvania made an order and opinion transferring the case to the Eastern District Court of Virginia on, the basis of unproper venue. ECF No. 42-43. On or about August 17, 2023, Defendant's filed a motion to dismiss for failure to state a claim, which this Court provided a hearing for on September 15, 2023 on or about August 18, 2023. ECF No. 46-48. Now Mr. Podell is filing this Memorandum in Opposition to Defendant's motion to dismiss in good faith belief that a factually sufficient and reasonable claim exists.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiff, Mr. Podell is an observant Jewish resident of Montgomery County, Pennsylvania. Mr. Podell applied for the Police Officer position with the National Geospatial Intelligence Agency

(NGA) on or about April 23, 2021. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 23. The positions he applied for were both located in St. Louis, Missouri and Springfield, Virginia. *Id*. Soon after Mr. Podell received an email invitation to participate in the first phase of pre-employment screening for the position in St. Louis, Missouri on or about June 9, 2021, which Mr. Podell replied to on or about June 16, 2021, stating that he could not go to because it was on a Saturday, and he observes Sabbath on those days. Pl's. 2d. Am. Compl. ECF No. 21, ¶¶ 41-42. In his reply, Mr. Podell also inquired about alternative processing days to accommodate his religious observances. On or about June 20, 2021, Mr. Podell was informed by NGA Police Lieutenant Wesley Jordan indicating that there were no alternate testing arrangements available and instead invited Mr. Podell to reapply in a few months on USAJobs.gov.  Pl's. 2d. Am. Compl. ECF No. 21, ¶ 43.

Mr. Podell received another email on or about June 28, 2021, that invited him to participate in a hiring event for the job listed in Springfield, Virginia, which once again was on a Saturday. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 44. Once Mr. Podell received notice that it was another event scheduled on the day of Sabbath, he replied to the email address indicating the religious reasons why he could not attend and requested a different testing date and time. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 45. This was on or about July 11, 2021. *Id*. Three days later on or about July 14, 2021, Mr. Podell received an email from the NGA Police stating they only have Saturday testing dates this year and that the NGA would reach their human resources department about a different testing date, while still inviting him to test on July 17, 2021, if he were to change his mind. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 46. About a month later on or about August 20, 2021, Mr. Podell received another email inviting him to participate in a hiring event for the job posted in Springfield, Virginia on September 18, 2021. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 47. Mr. Podell responded to the email on the day he received it explicitly communicating that this date was impossible for him to be

present on because it conflicted with the Jewish Sabbath being on a Saturday, so he had to RSVP indicating that he could not attend the event. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 48. Mr. Podell requested a testing date that did not conflict with the Jewish Sabbath nor any other Jewish holiday. *Id*.

Eventually, Mr. Podell received a reply on or about September 9, 2021, which indicated again that the testing for the position in 2021 was on Saturdays. Mr. Podell and his request for a reasonable accommodation was dismissed. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 49. On or about September 28, 2021, Mr. Podell received emails regarding the two police officer positions he applied to in Springfield, Virginia and discovered that his application was reviewed, but that he was not selected for the position. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 50. They gave him no explanation why he was not selected and stated in their email that due to the volume of email traffic the agency receives they could not give any explanation for the non-selection. *Id*. This led Mr. Podell to call the NGA Office of Diversity, Inclusion and Equal Employment Opportunity at or around 12:49 PM on or about October 4, 2021. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 51. Mr. Podell was left with no response, so he left a voicemail that was also never responded to. *Id*. On or about October 8, 2021, at or around 2:15 PM, Mr. Podell called the Office again and on his second attempt nobody answered the phone. He left a voicemail and did not get a response to his voicemail. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 52. On or about October 12, 2021, Plaintiff sent a written complaint to Defendant NGA.  Pl's. 2d. Am. Compl. ECF No. 21, ¶ 53. In this letter, Plaintiff provided a chronology of events leading up to initiating the complaint process, examples of how his religious beliefs were accommodated in the past, and examples of how other government employers have accommodated requests for alternative scheduling based on an applicant's/employee's religious beliefs to show how Plaintiff's requested accommodations were

reasonable and not an undue hardship for Defendants. *Id*. Eventually, Mr. Podell was able to reach the Office with Counsel and on or about October 26, 2021, Mr. David Coleman ("Mr. Coleman"), an EEO Intake Specialist of Defendant NGA's Office of Diversity, Inclusion, and Equal Employment Opportunity conducted a teleconference to start the EEO Counselor meeting phase of the process. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 54.

On or about October 26, 2021, at approximately 1:00 PM, Mr. Podell, his Counsel and Mr. Coleman conducted their conference to communicate about the initial intake and the informal phases of the complaint process. Mr. Podell decided to pursue the informal complaint process, while assuring that his rights to a formal complaint remained available.  Pl's. 2d. Am. Compl. ECF No. 21, ¶ 54-55. In a timely manner, Mr. Podell submitted the paperwork needed for the informal process through counsel. *Id*. During the early stages of the complaint process Mr. Podell's received an email from a representative of Defendant, NGA making a statement that was against their interest. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 57. The statement was the individual admitting that there was an obvious showing of discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964. *Id*.

There was no substantive structural change to the hiring process made either to further prevent discriminatory behavior to observing Jews applying for the position nor was there any efforts made to change diversity training so that discriminatory treatment against applicants or employees is less likely to happen as it did to Mr. Podell. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 58. Defendant NGA's representative Kelly K. Thomas's (of Defendant NGA's Office of Diversity, Inclusion and Equal Employment Opportunity) counsel accepted Mr. Podell's formal complaint. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 56.

### III. <u>STANDARD FOR A MOTION TO DISMISS</u>

A defendant is permitted to assert the defense for a failure to state a claim upon which relief can be granted, and it is not required to assert the defense in the responding pleading. Fed. R. Civ. P. 12(b)(6). "A complaint only need to be structured as a short and plain statement of the claim showing that the pleader is entitled to relief." *Bolding v. Holshouser*, 575 F.2d 461, 464 (4th Cir.). A motion to dismiss may test the sufficiency of a complaint but is not a mechanism to resolve disputes surrounding the facts, the merits of a claim or the applicability of any defenses raised. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Defendants in this case cite *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009)) and state that a mere recital of elements of a cause of action only supported by conclusory statements is not sufficient to survive a motion to dismiss for failure to state a claim. However, Defendants fail to note that the Fourth Circuit Court of Appeals in *Walters* also provided a second part of this rule, which states "to survive such a motion, a complaint must state a 'plausible claim for relief.' *Ashcroft v. Iqbal* at 678. The determination whether a complaint adequately states a plausible claim is a 'context-specific task,' *Id.* at 679, in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level,"" (Citing *Ashcroft v. Iqbal* at 678-679; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The *Walters* case provides a second inquiry in the Fourth Circuit that looks at or to whether there is a plausible claim for relief based on a context-specific assessment of a plaintiff's allegations. Defendant suggests that Mr. Podell is merely repeating the elements of his claims. The context of the factual claims should be reviewed in conjunction with the fact that a Jewish individual requesting a reasonable accommodation on the day of Sabbath (Saturday—Seventh day

G[-]d requested observation) was denied an alternative date or day to attend and participate in the hiring event.[3]

In fact, when a court is confronted with, "a motion to dismiss . . . [that] test[s] the sufficiency of a civil rights complaint, '[a] [court] must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)). Mr. Podell respectfully requests that the Court be especially solicitous of the wrongs alleged in this case and recognize the lineage of events where his requests for accommodations were denied as plausible—not conclusive—of the alleged legal theories discussed in the following sections.

## IV. <u>ARGUMENT ON THE COUNTS</u>

### A.   **Disparate Impact**

#### *1. Failure to State a Claim*

Defendants argue that in Count 2, disparate impact discrimination under Title VII, Mr. Podell has failed to provide the factual predicate to support a cause of action, while citing *Medeiros v. Walmart, Inc.*, 434 F. Supp. 3d 395, 416 (W.D. Va. 2020)[4]. What they failed to mention in that case is that "[s]ome facially neutral employment practices **may** violate Title VII, even in the absence of discriminatory intent, when they have a disparate impact on otherwise qualified

---

[3] Out of respect for Mr. Podell's beliefs we have notated G[-]d, the Almighty to avoid offense of the dictation of the label outside of a religious setting and/or context.

[4]   Defendants provided the following quote: "While disparate treatment claims focus on an employer's discriminatory intent, disparate impact claims focus on employment practices that produce discriminatory results."

individuals." *Id*. (citing Watson *v. Fort Worth Bank and Trust*, 487 U.S. 977, 988, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988)). This suggests that it is possible for a Title VII violation to be present not only when there is an absence of discriminatory intent, but even when the neutral employment practice has a disparate impact on those who hold minority religious views. In the case at hand the employment policy to host the hiring event only on Saturday (the day of Sabbath Observance), at first glance may appear to be a neutral day to hire individuals allowing more time to assess applicants.

However, this employment practice is discriminatory to those who observe the Sabbath on Saturday. Mr. Podell firmly and consistently communicated that he could not attend these days as he observed Sabbath each time the events occurred in June, July and September of 2021. Defendants each time after being in contact with Mr. Podell either denied him an accommodation or failed to provide an accommodation that would reasonably allow him to still attend the preemployment event or its functional equivalent. What Defendants do not understand about the day of Sabbath for an observant Jew is that it is not something one can merely skip now and then for something important like work. Sabbath is to be strictly observed as a day of rest dedicated to G[-]d where an observant Jew cannot engage in any employment activity. Moreover, the only exception to Sabbath is when a life is in danger. When an observant Jew is presented with such a situation, they have an obligation to save the life of themselves or another—obviously preemployment events do not meet this exception.[5]

"[T]he employee must isolate and identify the specific employment practices that are allegedly responsible for the discrimination. Id. Then, '[a] plaintiff must allege either the existence

---

[5] G[-]d "ceased on the seventh day from doing any work" and "commands the Jewish people to likewise observe the Sabbath." See *Genesis* 2:2 & *Exodus* 31:15-17.

of 'numerical or statistical evidence demonstrating disparate impact' or 'sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that [the employment practice] has a discriminatory impact on [the protected group].'" *Jones v. Virginia Polytechnic Institute and State University*, No. 7:17-cv-531, 2018 U.S. Dist. LEXIS 163753, 2018 WL 4604563 at *6 (W.D. Va. 2018) (quoting *McCoy v. Canterbury*, No. 3:10-0368, 2010 U.S. Dist. LEXIS 134633, 2010 WL 5343298, at *5 (S.D.W. Va. Dec. 20, 2010)). Here, Mr. Podell identified the specific practice of the NGA to exclusively hold preemployment events on Saturday with no exceptions to reasonably accommodate Sabbath observant Jews like Mr. Podell himself. The impact of strict and inflexible preemployment practices like these have brought hardship and leave observant Jews having to sacrifice employment over a day of the week that can easily be changed to accommodate their observance of Sabbath.

> Observant Jews have had limitations on their abilities to observe the commandments in relation to work. Most obviously, that has included Jews' ability to observe the days when they are commanded *not* to work, including both the weekly Shabbat and the annual *yomim tovim*, or Jewish holidays, such as Pesach, Shavuot, and Sukkot.

Brief *Amicus Curiae* of the Union of Orthodox Jewish Congregations of America in Support of Petitioner to the Supreme Court of the United States. 5 (Feb. 2023) (Nathan J. Diament on the behalf of the Union of Orthodox Jewish Congregations of America). Brief for Gerald E. Groff as Amicus Curiae Supporting Petitioner, Gerald E. Groff v. Louis DeJoy, Postmaster General, United States Postal Service, (Feb. 2023) (No. 22-174).

Mr. Podell, as an observant Jew, has provided sufficient detail on the dates and conversations he has had with NGA's employees about an alternative date not on the Sabbath. "If a plaintiff establishes a prima facie case, 'the employer must then demonstrate that 'any given requirement [has] a manifest relationship to the employment in question, 'in order to avoid a

finding of discrimination.'" *Connecticut v. Teal*, 457 U.S. 440, 446-47 (1982) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, (1971)). Mr. Podell firmly believes he has a *prima facie* case because of sufficient factual detail, including numerous accounts of the impact he sustained from his own preemployment experience.

Mr. Podell provided in his EEOC Complaint and in this Memorandum each time in June, July and September he inquired about an accommodation for an alternative testing time and each time he was either denied, ignored or the NGA failed to grant him an accommodation. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 77-117. We respectfully request that the Court finds Mr. Podell has established a *prima facie* case as the seemingly neutral practice to have preemployment screening only on Saturdays had a significantly discriminatory impact preventing Mr. Podell from engaging in the preemployment activity, and impacting other Sabbath observing Jews who would be limited from employment these preemployment activities without an ample alternative.[6]

### 2. Exhaustion of Administrative Remedies

Defendants deny that a disparate impact claim can be applied at this stage because Mr. Podell failed to include a disparate impact claim during the administrative proceedings with EEOC, but this contention is not accurate based upon the first complaint filed by Mr. Podell after he reached out to the EEOC. "Before a plaintiff can file suit under Title VII, she 'must exhaust administrative remedies buy filing a charge with the EEOC.' This charge 'defines the scope of the plaintiff's right to institute a civil suit,' and the 'scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of

---

[6] To establish a prima facie case of disparate impact discrimination under Title VII, a plaintiff must "show that the facially neutral employment practice had a significantly discriminatory impact." *Walls v. City of Petersburg*, 895 F.2d 188, 191 (4th Cir. 1990) (citing *Connecticut v. Teal*, 457 U.S. 440, 446, 73 L. Ed. 2d 130, 102 S. Ct. 2525 (1982)).

discrimination.'" *Sewell v. Westat*, No. RWT-16-158, 2016 U.S. Dist. LEXIS 154757. 2016 WL 6600533 (D. Md. Nov. 8, 2016) (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). In this case, it is reasonable to anticipate that following the charge with the EEOC for discriminatory behavior a plaintiff will file and try a case containing both a disparate impact and disparate treatment claim. Most civil rights cases that deal with religious discrimination and hiring contain both charges, essentially putting a defendant on reasonable notice that such charges are likely to be within the scope of civil rights litigation.

Defendants cite to *Earl v. Norfolk State Univ.*, 2014 WL 2916718, at *12 (E.D. Va. June 26, 2014), but they neglect to mention that the case addressed an alleged violation of the Age Discrimination of Employment Act of 1967. The law cited in that case is completely separate from and inapplicable to the Title VII disparate impact charge set against Defendants. Mr. Podell after filing his complaint with the EEOC filed a complaint which contained allegations that setting the preemployment event exclusively on a Saturday (2021) affected one group more harshly than another—Sabbath Observing Jews.[7] The Complaint on line 265 stated: "[d]eclaratory relief should include, but not be limited to, a declaratory judgment with respect to the rights of Jewish applicants to receive reasonable accommodations and non-discriminatory conduct. Defendants should be required to formally account for other Jewish applicants for whom they have denied reasonable accommodation and should be required to, in the future, comply with the standards, guidelines, and requirements **in connection with the treatment of Jewish applicants**, all others, and the necessity to provide reasonable accommodation." (emphasis added).

---

[7] This statement was made in response to Defendants relying on *Earl v. Norfolk State Univ.*, 2014 WL 2916718, at *12 (E.D. Va. June 26, 2014) stating the Court in that case responded by "dismissing disparate impact claim for failure to exhaust where the plaintiff focused only on the treatment he received and did not include allegations that any policy affected one group more harshly than another."

Mr. Podell also stated on line 273 that "Defendants **should be required to account for other Jewish applicants** and provide appropriate relief, including but not limited to, notification to those applicants that they have been discriminated against" and on line 274 that, "Defendants should be required to specifically remediate their conduct and failures to act **with respect to Jewish applicants and potential Jewish applicants**, and to offer reasonable accommodation and non-discriminatory treatment." (emphasis added). In these statements Mr. Podell not only seeks redress for himself but also for other Sabbath observing Jews who apply in the future by requesting that the NGA makes it a necessity to reasonably accommodate the applicants who identify with this group by providing an alternative day and time that is not Saturday (Sabbath). Mr. Podell also exhibited his desires in these claims for this group of individuals to have appropriate relief and for the standards, guidelines and requirements not only to be complied with for applicants in the of observant Jews, but to remediate any discriminatory conduct or failure to comply with these standards.

Finally, Defendants in footnote four state that, "in the context of employment discrimination cases, courts frequently consider administrative documents, such as EEO charges, when disposing of Rule 12(b)(6) motions."[8] Of course the EEO charges are an important to consider in this case, but Mr. Podell respectfully reminds the Court of the *Sewell v. Westat* case that suggests that the Court should also consider the charges in the Civil suit, following the initial EEO charge when Mr. Podell sought separate private counsel.

---

[8] Relying on: *Mustafa v. Iancu*, 313 F. Supp. 3d 684, 687 (E.D. Va. 2018); *Davis v. Navy Fed. Credit Union*, No. 1:11-cv-01282, 2012 WL 73233, at *3 (E.D. Va. Jan. 10, 2012); *Edwards v. Murphy-Brown*, LLC, 760 F. Supp. 2d 607, 618 n.3 (E.D. Va. 2011).

**B.       Retaliation**

After further consideration Mr. Podell concedes at the current time with respect the charge of Retaliation. No discovery has been available, but discovery may provide evidence that Mr. Podell was continuously denied an accommodation as retaliation for his requests to observe on Saturday. Hopefully the Court will dismiss this Count without prejudice.

**C.       Hostile Work Environment**

After further consideration Mr. Podell concedes with respect to the Count of Retaliation. Mr. Podell respectfully requests that this charge be dismissed without prejudice.

**D.       Disparate Treatment Claims**

Defendants claim that Mr. Podell failed to timely contact the EEO within forty-five days of the challenged discriminatory action under 29 C.F.R. 1614.105(a)(1) (pre-complaint processing) but failed to mention the listed exceptions that follow in subsection (a)(2). Under 29 C.F.R. 1614.105(a)(2):

> The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when [1] the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, [2] that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, [3] that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, [4] or for other reasons considered sufficient by the agency or the Commission.

We will address two of these exceptions further.

**1.   *No Notification or Awareness of Time Limits***

Defendants state that Mr. Podell's Second Amended Complaint offers no explanation for not bringing the challenged discriminatory action to the attention of an EEO counselor, but there is an explanation. When Mr. Podell was denied reasonable accommodation on multiple occasions, he was never notified nor aware of the forty-five-day time limit. Mr. Podell was not aware of the

13

nuisances of the EEO requirements not being an employee who would have been notified or given knowledge on how to handle these issues, nor was he given this information by an EEO Counselor and/or NGA preemployment director during the process. *Jakubiak v. Perry*, 101 F.3d 23, 27 (4th Cir. 1996) (finding a plaintiff not aware of the time limitation until after they first met with an EEO counselor sufficient to meet this exception because there is only notice if it is reasonably geared to inform an employee that must see an EEO Counselor within forty-five days of the alleged discriminatory action).

Instead, Mr. Podell was only made aware of this time limitation once the complaint process began and when Mr. Podell and his counsel spoke with Mr. Coleman from the NGA's EEO apparatus. Mr. Podell also believed that he had to be eliminated from the consideration in order to be able to file an EEO complaint. He also learned that an isolated incident under Title VII is generally not actionable. When the first refusal or failure to reasonably accommodate Mr. Podell occurred, he had not yet reached the EEO stage.

### 2. Circumstances Preventing Mr. Podell From Contacting the EEO Outside His Control

Mr. Podell also has provided the explanation that there were various communication issues outside of his control that prevented him from contacting an EEO counselor withing the forty-five-day time limit. Mr. Podell called NGA's EEO office on two occasions, both October 4 and October 8 of 2021. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 51-52. On both of those occasions nobody answered the call and Mr. Podell left a message. *Id*. Mr. Podell also sent a written complaint to Defendant to show how his requested accommodations were reasonable and accommodated before by other government employers on or about October 12, 2021. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 53. Mr. Podell called the NGA's EEO office with Counsel where Mr. Podell would finally get a response. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 54-55. This information demonstrates that once Mr. Podell

14

learned he was not selected on September 28, 2021, Mr. Podell tried to make contact with NGA's EEO office within forty-five-day time frame in October. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 50. Mr. Podell on both of these days in October also had no control over whether NGA's EEO office would answer his calls after trying diligently making an effort to contact the office about the agency's failure or refusal to provide him a reasonable accommodation on multiple occasions. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 41-49. Mr. Podell was prevented from reaching an EEO counselor due to the EEO not answering or responding to his first two calls and to his written complaint which were circumstances created by the agency beyond Mr. Podell's control. Pl's. 2d. Am. Compl. ECF No. 21, ¶ 51-53

Mr. Podell respectfully asks that the Court find he had established both exceptions to move forward on his disparate treatment claim.

## E.    Constitutional Claims

The government argues that in a one paragraph argument found on Page 19-20 of its brief the entirety of the Constitution is preempted in this case.

Defendants chiefly rely upon *Brown vs. General Services Administration*, 425 U.S. 820 (1976).  The argument is that §717 of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e-16, provides the, "exclusive judicial remedy for claims of discrimination in federal employment." A careful reading of *Brown*, however, does not extend it to preempting federal employment *religious* discrimination.

At least one more recent United States Supreme Court case has characterized *Brown's* holding a specific to claims of racial discrimination in federal employment.  In *Jett*, the Supreme Court noted that in *Brown*, "[the] Court…[held] that §717 of Title VII constituted the exclusive

remedy for allegations of racial discrimination in federal employment." *Jett vs. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 734 (1989).

*Brown's* rationale does not apply to the RFRA either.  *Brown* applied the principle that a, "precisely drawn, detailed statute pre-empts more general remedies." *Brown*, 491 U.S. at 735 (quotation omitted).  The RFRA is a more specific remedy than Title VII.  While Title VII is specific to federal employment, the RFRA *only* protects against government-imposed burdens on the free exercise of religion, rather than the other forms of discrimination that Title VII protects against, 42 U.S.C. §2000e-16(a); 42 U.S.C. §2000bb-1.  *Brown* compared §717 to 42 U.S.C. §1983, finding that former is more "precisely drawn" because of Title VII's "careful and thorough remedial scheme" that "provides for a careful blend of administrative and judicial enforcement powers." *Brown*, 425 U.S. at 833.

The RFRA does not provide for a complicated remedial scheme.  *See* 42 U.S.C. §2000bb-1.  *Brown's* focus on the complexity of the remedial scheme is not a universal methodology for determining whether a statute is "precisely drawn."  *Jett's* analysis of this rule appears as focused on policy.  *Jett*, 491 U.S. at 735 ("As petitioner here would have it, the careful balance drawn by the 42d Congress between local autonomy and fiscal integrity and the vindication of federal rights could be completely upset by an artifice of pleading.").

Most persuasively, especially for the current Supreme Court, the plain text of the RFRA disclaims the idea that Title VII preempts it.  Defendants have changed their position in this Court and no longer claim that Title VII preempts the RFRA, at Page two of Plaintiff's Brief.  Specifically, the RFRA, "applies to *all Federal law*, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993."  42 U.S.C. §2000bb-3 (emphasis added).  No such language is found in §1983, which the *Brown* court held

was displaced by Title VII.  In fact, Congress has never passed a statute that exempts itself from RFRA.  *Cf.* Alex Reed, *The Title VII Amendments Act: A Proposal*, 59 Am. Bus. L.J. 339, 351 (2022) (describing the Equality Act as "the first time a bill seeking to limit RFRA's scope had been introduced in Congress").

In *Bostock vs. Clayton County*, the Supreme Court observed that, "[b]ecause RFRA operates as a kind of super statute, displacing the normal operation of other federal laws, it might supersede Title VII's commands in appropriate cases."  140 S. Ct. 1731, 1754 (2020).  Just this June, the Supreme Court left open whether plaintiffs may bring employment-based RFRA claims against the federal government.  *See Groff vs. Dejoy*, No. 22-174, 2023 WL 4239256, at *10 n. 14 (U.S. June 29, 2023).

The importance of the Religious Freedom Restoration Act, including the necessity for a damage remedy thereunder, is well demonstrated by *Tanzin vs. Tanvir*, 141 S. Ct. 486, 209 L. Ed. 2d 295, 220 U.S. LEXIS 5987 (2020), *distinguished by Allen vs. Becerra*, 2022 U.S. Dist. LEXIS 21989, 2022 WL 374409 (2022).

In *Henley vs. Brown*, 686 F.3d 634, 638 (8th Cir. 2012), the female plaintiff alleged sex discrimination while attending the police academy.  The plaintiff brought claims under the Fourth and Fourteenth Amendments.  *Id.* Defendants filed a motion to dismiss for failure to exhaust administrative remedies on the basis that Title VII provided the exclusive remedy for her claims. *Id.* The district court granted defendants' motion and the Eighth Circuit reversed.  *Id.* at 644.

The Circuit Court noted that the Supreme Court had yet to decide whether Title VII provides the exclusive remedy for discriminatory practices, but has provided instruction through its jurisprudence.  *Id.* at 640.  The Supreme Court, "recognized generally that Title VII does not preclude a public employee from seeking other remedies."  *Id.* at 640 (citing *Alexander vs.*

*Gardner-Denver Co.*, 415 U.S. 36 (1974)).   "Title VII was designed to supplement rather than supplant existing laws and institutions relating to employment discrimination."   *Id.* (quoting *Alexander*, 415 U.S. at 47-49). "The  Court observed that '[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief."   *Id.* (quoting *Johnson vs. Railway Express Agency*, 451 U.S. 454, 459 (1975)).

The Circuit Court in *Henley* next looked to the Supreme Court's opinion in *Brown v. General Services Administration*, *supra*.  *Brown* was authored by Justice Stewart.  It specifically concerned § 717 of the Civil Rights Act of 1964.  Demonstrative of the era in which *Brown* was decided, Clarence Brown is addressed as a "Negro".  He was employed by the General Services Administration and had been since 1967.  The specific issue in *Brown* is not the same as in this case.  The issue as stated by Justice Stewart was whether § 717 of the Civil Rights Act of 1964 is, "the exclusive individual remedy available to a **federal employee** complaining of **job-related racial discrimination?"**  *Brown, supra,* at 825 (emphasis added).  *Brown* was decided prior to modern legal principles concerning direct civil rights actions and was premised on the assertion that there was no constitutional basis for a claim of discrimination on the part of a federal employee against the federal government.  *Brown* also raised the specter of sovereign immunity, in order to justify its preemption decision in the context of an already-employed individual.

It is also not noted by the Government that *Brown* had nothing to do whatsoever with indicating that there would not be a separate constitutional claim.  In *Brown*, the issue only reached the Court because the jobholder failed to file a timely complaint under § 717(c) and the employee

therefore attempted to rely upon a preexisting Civil Service remedy.  The *Brown* decision hardly contains *dicta* that would support the position of the Government.

> Although federal employment discrimination clearly violated both the Constitution, *Bolling v. Sharpe*, 347 U.S. 497 (1954), and statutory law, 5 U.S.C. § 7151 before the passage of the 1972 Act, the effective availability of either administrative or judicial relief was far from sure.

*Id.*

Therefore, for the Government to claim the broad preemption which they do in their Brief, is not supported by the United States Supreme Court decision which they rely upon as dispositive.

After analyzing guidance provided by the Supreme Court's jurisprudence, the Circuit Court in *Henley* stated as follows:

> First, Title VII provides the exclusive remedy for violations **of its own terms** and an employment discrimination plaintiff asserting the deprivation of rights created by Title VII must comply with the Act's procedural requirements before seeking judicial review.  Second, a plaintiff may not invoke a purely remedial statute, such as section 1985(3), to redress a violation of a right conferred **only** by Title VII.  However, **when the employer's conduct violates not only rights created by Title VII, but also rights conferred by an independent source, Title VII supplements, rather than supplants, existing remedies for employment discrimination**.

*Henley*, 686 F.3d at 641 (emphasis added).  The Court concluded, "while Title VII provides the exclusive remedy for employment discrimination claims created by its own terms, its exclusivity ceases when the employer's conduct also amounts to a violation of a right secured by the constitution," and expressly referred to claims for discrimination and equal protection.  *Id.* at 642.

In *Williams v. Pa. Human Rels. Comm'n*, 870 F.3d 294, 300 (3d Cir. 2017), the Third Circuit cited *Henley*'s conclusion that a right independently conferred by the Constitution is not preempted by Title VII.

More to the point *Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693 (1954), decided before the advent of modern civil rights law, or even Title VII.  *Bolling* was a Chief Justice Warren

opinion which held that the Equal Protection Clause of the Fourteenth Amendment prohibits states from maintaining racially segregated public schools. The Fifth Amendment, noted the court, which is applicable to the District of Columbia, does not contain an Equal Protection Clause as does the Fourteenth Amendment which applies only to the states.

> But the concept of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive. The "equal protection of the laws" is a more explicit safeguard of prohibited unfairness than "due process of law", and therefore we do not imply that the two are always interchangeable phrases. But as this court has recognized, discrimination may be so unjustifiable as to be violative of due process.

*Bolling* at 499.

The constitutional protections are not abandoned by the courts simply because Mr. Podell may have a Title VII or other statutory remedy as well.

> In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government. We hold that racial segregation in the public schools of the District of Columbia is a denial of the due process of law guaranteed by the Fifth Amendment to the Constitution.

*Bolling* at 500.

In stunning terms, the United States Supreme Court has clearly held that federal constitutional protections are not eviscerated just because the Federal Government or its agencies and employees are defendants who have committed the offense.

Finally, the Government cites to *Bullock v. Napolitano*, 666 F.3d 281 (4th Cir. 2012). The holding of this decision concerned sovereign immunity. The United States and the Secretary of Homeland Security did not consent to be sued in North Carolina state court under Title VII. Therefore, the state court lacked subject-matter jurisdiction. Removal to federal court did not cure that jurisdictional defect.

The statement in *Bullock* concerning Title VII as an "exclusive" administrative and judicial scheme, "for the redress of federal employment discrimination," *Brown* at 829, was in the context of waiver in Title VII.

The Government, in its Brief, is careful not to posit its argument as one based upon sovereign immunity, since that would clearly have to be rejected by the Court.  At issue in *Bullock* was whether a Title VII action can be filed in state court.

For the Government to argue from this decision that Title VII preempts the Constitution of the United States is breathtaking.  Undoubtedly, the Government's position is motivated by the limitations of Title VII including the more limited right to trial by jury.

There is no question that this Honorable Court has jurisdiction and sovereign immunity is not an issue.

Also relied upon by the Government is *Conway v. Pompeo*, 2018 U.S. Dist. LEXIS 231670, for which an official citation cannot be found.  Plaintiff was a *pro se* litigant who charged national-origin discrimination and retaliation.

The Court opined that Title VII was the exclusive remedy for federal employees, which unfortunately Mr. Podell never became.

Neither sovereign immunity nor the position of an individual as an employee of the United States militates in favor of dismissing Mr. Podell's constitutional claims based upon preemption.

The Government attempts to have it both ways.  On the one hand, they argue that because Mr. Podell was not an employee, but rather a job applicant, he cannot claim either harassment or retaliation; but on the other hand, the Government attempts to rely upon a single district court case, not officially reported, for the proposition that an employee only has a right to sue pursuant to Title VII.  The Government cannot have it both ways.

**F.       Official-Capacity Claims Against Defendants Other than Secretary Austin**

The position of the United States is that the claims against Defendants in their official capacities are "duplicative" of claims against the agency itself and therefore subject to dismissal. Counsel for Plaintiff agrees that an official-capacity suit is to be treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  However, that does not mean that individuals cannot be sued for their own misconduct.  The fact that an individual has taken action or failed to act in a liability creating manner, does not automatically eliminate that individual in terms of claims made.

As has been alleged in Plaintiff's very detailed Complaint, each named Defendant had a role in creating and enforcing a policy in contradiction to requirements to afford applicant a reasonable accommodation for religious purposes.

Paragraphs 2 through 14 of the Complaint provide the specific capacity in which each Defendant was functioning.  Case 2:22-cv-03505-JHS Document 21 Filed 11/29/22, pp. 3-5 of 63.

However, Plaintiff does not rest merely upon the job descriptions of the named Defendants. The **SPECIFIC FACTS** portion of the Complaint beginning at paragraph 39, p. 11 of 63 through paragraph 198, p. 41, detail the conduct or failure to act taken by each individual Defendant.  It is believed, and therefore averred, that the Government will claim that the actions taken by the individuals were in opposition to official Government policy.  If that is the case, the individuals may indeed have been acting in their official capacities, but nevertheless outside their permitted and required job descriptions.

In the Government's iteration of the allegations, they very carefully parse the allegations of the Complaint.  The allegations reiterated by the Government clearly state that a reasonable accommodation was not offered, and there is a subtle suggestion in the brief filed by the United

States, that it did not need to be offered, a position blatantly at odds with both the statutory and regulatory framework abundantly set forth in Plaintiff's Complaint.

It is important to emphasize that in this case, there was both a failure to comply with the Government's own standards in connection with the refusal to accommodate Mr. Podell's religious beliefs, and in addition, that the individuals administering the application process were either untrained or refused to comply with the standards applicable, and perhaps both.

While the Government attempts to skate away from individual responsibility, it would be premature at this time to suggest that the vicarious nature of the statutory structure permits individuals to be dismissed just because the illegal and improper action they took occurred while they were acting in their official capacities. There is no doubt that this case will be defended, as has been inferred throughout, by Defendants claiming that they did not know their obligations, did not intend discrimination and that they could be exculpated by a lack of training and their own ignorance. In essence, the Government will throw under the bus those who have been sued in their official capacities, defending this case with an "ignorance of the law" excuse. In those circumstances, this is not the appropriate time to dismiss the individuals.

The Government relies upon a "*See, e.g.*" case of *King v. Dalton*, 895 F.Supp. 831, 844 (E.D. Pa. 1995). *King*, an opinion by Your Honor, was a Title VII sexual harassment suit brought against the Navy and one of its employees. The question presented in that case was: "Whether, and under what circumstances, an employee of a government contractor is also deemed to be an employee of the government for Title VII purposes." At p. 1. In order to answer that question, the Court posed the issue as to whether an employee may have more than one employer under the Act. That question would inevitably, in *Dalton*, lead to the inquiry as to whether the Navy and the government contractor were plaintiff's employers for purposes of Title VII liability.

23

The Court wisely determined that an aggrieved employee, in appropriate circumstances, can have more than one employer under Section 2000e-16.  However, those circumstances do not exist in *Dalton*.  The factual issue addressed by the Court in *Dalton* was right to control the employee.  Ultimately, the Court needed to determine who the employer of the Plaintiff was, or if two entities were in essence co-employers.  In the opinion, the Court noted that even if the Navy were King's employer, Section 2000e-16 explicitly states that if a suit is brought pursuant to its provisions, the head of the department or agency shall be the defendant.  The Court did not address whether that language excludes individuals as defendants, based upon their behavior, their action or failure to act.  In *King*, the Court assumed, understandably, and without discussing the specifics, that the Secretary of the Navy, in his official capacity, was the only proper defendant.  Thus, King's claim against Lovett his official capacity was granted.  King was the Secretary of the Navy, and clearly was named in *King* as a straw man.  That is not the case in the instant situation, where there are explicit behaviors by the individuals named whose conduct the Government may very well disavow, at least as to intentionality.  Therefore, the instant case presents the polar opposite factual scenario from *King v. Dalton*.

In *King*, the factual scenario had to do with sexual harassment by the Navy's project director, and had nothing to do with the behavior of the Secretary of the Navy.  In this case, we have a specific policy for which the Secretary of Defense was responsible, a virtually admitted failure of training or enforcement, and a host of individual misconduct by those down the chain of command. The United States also relies upon *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Court, Justice Marshall delivering the majority opinion, addressed the question as to whether 42 U.S.C. § 1988 allows attorney's fees to be recovered from a government entity when a plaintiff sues governmental employees only in their personal capacities and prevails.  What this decision

has to do with the matter before this Honorable Court is difficult to discern.  *Kentucky* does not stand for the proposition that in a Title VII action, or in any action, an individual cannot be sued and that all actions against a government must only be against the government itself.  In *Kentucky v. Graham*, there was a settlement barring plaintiff respondents from seeking attorney's fees from any of the individual defendants, but specifically preserving their right to seek fees and costs from the Commonwealth.  At issue was Eleventh Amendment immunity for the state where there was no long already pending case against the state or any judgment against the entity.

The specific issue was whether "fees can be recovered from a governmental entity when a plaintiff prevails in a suit against government employees in their personal capacities."  At p. 5.  The actual holding by the Supreme Court was that only in an official-capacity action is a plaintiff who prevails entitled to relief, both on the merits and for fees, to the governmental entity.  The fact that a plaintiff prevails in a lawsuit against an individual in an individual capacity, does not automatically obligate the state to pay.  Again, this case seems to be the virtual reverse of the matter before Your Honor where individuals are sued based upon their individual misconduct which actions they took on behalf of the United States.

The Government relies upon another case "*See, e.g.*" citation in *Turner v. Supreme Court of Virginia*, 219 WL 13297449, at *3 (E.D. Va. Feb. 20, 2019).  *Turner* seems to be another case cited by Defendant, which is not to be found in the official reporter.  *Turner* involved plaintiff's motion for entry of default against the Supreme Court of Virginia in connection with her retaliation claim under the Rehabilitation Act.  Addressed by the court was excusable neglect.  It is a gap too far to jump to argue that *Turner* has anything to do with the case at bar or that it supports the position of the United States of America.

We are simply left, in the case at bar, with the question as to whether individuals who act improperly, and whose conduct is specifically alleged, can be sued individually where they are employed by the United States of America and have acted, or failed to act, inconsistently with their duties, obligations, and the legal framework in which they function.

An interesting case well worth reviewing is *Stramaski v. Lawley*, 44 F.4th 314 (5th Cir. 2022). While *Stramaski* was decided pursuant to the Fair Labor Standards Act, in terms of whether an individual could be sued in their individual capacity as opposed to the alleged misconduct representing state action, the Court noted that the issue may depend upon the circumstances of each suit. The *Stramaski* court found that the plaintiff's suit was not barred by sovereign immunity and that she could bring a retaliation claim against defendant Lawley in his individual capacity. For purposes of the Fair Labor Standards Act, the Court noted that governmental employees can be sued in their individual capacity, which of course is true under the civil rights laws as well.

If there is any ambiguity in the instant case, Plaintiff is certainly willing to amend his Complaint in order to make clear that Defendants may have been acting in their individual capacities or in their official capacities, as the evidence may demonstrate. Another approach would be for the Government to certify that all the actions taken by Defendants were in their official capacities, even their alleged disregard of Government policies, mandates and proclamations (as well as statutes) requiring a reasonable accommodation. It is the concern of Plaintiff, as referenced earlier, that the United States will take the position that the individuals who discriminated against Mr. Podell were not acting with any Government authority, support or endorsement. Plaintiff seeks to assure that either the individuals will be kept in this case or that the Government will accept responsibility for their conduct and failure to act.

# V. <u>CONCLUSION</u>

Mr. Podell respectfully requests that the claims made in the Second Amended Complaint

remain in this Honorable Court and that Defendants' Motion to Dismiss those claims be denied

for the claims not conceded upon to be dismissed.

Respectfully submitted,

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

By: <u>/s/ Clifford A. Rieders, Esq.</u>
PA Attorney ID #20962
Counsel for Plaintiff
Admitted *Pro Hac Vice*
161 West 3rd Street
Williamsport, PA 17701
(P) 570-323-8711 (F) 570-323-8711
Email: <u>crieders@riederstravis.com</u>

KAISERDILLON, PLLC

<u>/s/ Justin Dillon, Esquire</u>
Justin Dillon, Esquire
Local Counsel for Plaintiff
Va. Bar No.: 48233
1099 14th St. NW
8th Floor West
Washington, DC 20005
(202) 640-4427
jdillon@kaiserdillon.com

27