**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| JEFFREY PODELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-1025-TSE-JFA |
| | ) | |
| LLOYD J. AUSTIN, Secretary of Defense, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Defendant Lloyd J. Austin, Secretary of the United States Department of Defense, and the other non-entity individual defendants, all named in their official capacities, respectfully submit this reply memorandum in support of their partial motion to dismiss the Second Amended Complaint in the above-captioned action.

## I.   INTRODUCTION

At its core, despite the considerable length of both Plaintiff's Second Amended Complaint and opposition memorandum, his lawsuit is quite simple and straightforward.  Plaintiff alleges that the National Geospatial-Intelligence Agency ("NGA") interfered with and failed to accommodate his religious beliefs by neglecting to hold certain pre-employment processing events on a day other than Saturday.  *See generally* Dkt. 58.  Thus, Plaintiff has asserted claims for disparate treatment under Title VII and religious interference under the Religious Freedom Restoration Act ("RFRA"), the majority of which Defendants have not moved to dismiss at this stage.  Nevertheless, Plaintiff has complicated his suit by attempting to pigeonhole these allegations into a number of different additional theories of liability under which he is plainly unable to proceed, either because he has

failed to exhaust these claims, failed to plead facts sufficient to support a viable cause of action, or both.

Plaintiff partially admits as much in his opposition, conceding that he has failed to plead facts sufficient to support his Title VII retaliation and hostile work environment claims. *See* Dkt. 58 at 18. Nevertheless, Plaintiff urges in his opposition that his Title VII disparate impact, disparate treatment, constitutional, and official-capacity claims against anyone other than Secretary Austin should survive Defendants' Motion to Dismiss. Yet nowhere in Plaintiff's lengthy opposition will the Court find relevant controlling authority for the various arguments made in support of these claims. Contrary to his protestations, Plaintiff cannot assert Title VII claims against defendants other than Secretary Austin and cannot advance constitutional claims based on the same conduct as any Title VII claims that may survive. Further, Plaintiff has failed to demonstrate that he timely exhausted all of the disparate treatment claims asserted in the Second Amended Complaint. For all of these reasons, Counts Two through Seven, any Title VII or official-capacity claim against any defendant other than Secretary Austin, and any disparate treatment claim based on actions occurring before August 20, 2021, should be dismissed with prejudice.

## II. <u>ARGUMENT</u>

### A.   **Plaintiff's Title VII Disparate Impact Should Be Dismissed.**

#### 1.   *Plaintiff did not exhaust any disparate impact claim.*

Even if Plaintiff has pled the requisite factual predicate to support a viable disparate impact claim (which, as discussed *infra*, he has not), he never timely exhausted any such claim at the administrative level. Plaintiff urges in his opposition that, despite not alleging a disparate impact claim in his administrative complaint of discrimination, it was "reasonable to anticipate" that his

Complaint in federal district court would contain "both a disparate impact and disparate treatment claim," asserting without citation that "[m]ost civil rights cases that deal with religious discrimination and hiring contain both charges[.]"  Dkt. 58 at 16. But Plaintiff can muster no authority for the proposition that a litigant is excused from his exhaustion obligation simply because other litigants in the past have asserted both theories—*after*, of course, exhausting *both* administratively.  In any event, it is fatal to Plaintiff's disparate impact claim that his "allegations in the EEOC charge sound as a disparate treatment or intentional discrimination claim rather than a disparate impact claim[.]"  *Abdus-Shahid v. Mayor and City Council of Balt.*, 674 F. App'x 267, 275 (4th Cir. 2017).  The allegations in Plaintiff's charge of discrimination relate solely to *his* inability to participate in the NGA's Saturday hiring events, thereby purportedly resulting in *his* non-selection.  Indeed, Plaintiff concludes the narrative statement of his claims by stating, "I believe that I was discriminated against on the basis of religion (Jewish) in violation of Title VII of the Civil Rights Act of 1964, as amended."  Dkt. 47-1 at 7.  In his opposition, Plaintiff points to nothing in his administrative complaint that even *hints* at the notion of disparate impact.  To the contrary, Plaintiff cites to his Second Amended Complaint *in this Court* requesting a declaratory judgment.  *See* Dkt. 58 at 16; Dkt. 21, ¶ 280.  Plaintiff's administrative complaint, even under its most liberal construction, sounds solely in disparate treatment with respect to the NGA's alleged failure to accommodate his religious accommodation requests.  Accordingly, Plaintiff has not exhausted any disparate impact claim, and that claim should be dismissed.

### 2. *Plaintiff fails to plead facts sufficient to support a disparate impact claim.*

In addition, as stated in their opening memorandum, Defendants argued exclusively that Plaintiff has not sufficiently pled facts demonstrating that the challenged practice—holding pre-

employment processing events on Saturdays in 2021—had a discriminatory impact.[1]  Plaintiff's opposition fails to meaningfully address this fatal pleading flaw, instead asking the Court to simply *assume* that the practice had a discriminatory impact because it impacted Plaintiff himself.  *See, e.g.*, Dkt. 58 at 8 (stating the practice "is discriminatory to those who observe the Sabbath on Saturday" because Plaintiff "firmly and consistently communicated that he could not attend these days as he observed Sabbath each time the events occurred in June, July and September of 2021").

Plaintiff correctly notes that, to assert a viable disparate impact claim, he must plead facts alleging "either the existence of numerical or statistical evidence demonstrating disparate impact or sufficient factual detail of a series of discrete episodes of the contested employment practice[.]" *Madeiros v. Wal-Mart, Inc.*, 434 F. Supp. 3d 395, 416 (W.D. Va. 2020); *see also* Dkt. 58 at 14. Nevertheless, Plaintiff is only able to point to the three pre-employment processing events he was unable to attend in 2021.  He then states, without citation, that "[t]he impact" of this practice "brought hardship and [left] observant Jews having to sacrifice employment over a day of the week that can be easily changed to accommodate their observance of Sabbath."  Dkt. 58 at 14. Notwithstanding the fact that Plaintiff never specifically alleged this in the Second Amended Complaint,[2] he points to no actual instance of Jewish applicants being adversely impacted by the challenged practice (other than his own).  Rather, Plaintiff asks the Court to infer that because *he* was adversely impacted by the decision to hold these three pre-employment processing events on

---

[1] Plaintiff curiously argues that Defendants somehow overlooked the well-established principle that a facially neutral employment practice may violate Title VII.  Dkt. 58 at 12–13.  But Defendants' opening memorandum, Dkt. 47, at 8, states that "a plaintiff must show that [a] facially neutral employment practice had a discriminatory impact."  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005).

[2] Of course, "it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 472 n.9 (E.D. Va. 2015) (quotations omitted).  Thus, Plaintiff's claims in his Opposition are unpersuasive for that additional reason.

Saturdays in 2021, other Jewish applicants were similarly affected.  These allegations, amounting to mere speculation and guesswork, are plainly insufficient to support a viable disparate impact claim.  *See, e.g.*, *Flores v. Va. Dept't of Corr.*, 2021 WL 668802, at *7 (W.D. Va. Feb. 22, 2021) (granting dismissal of a disparate impact claim where the plaintiff pled neither numerical or statistical evidence or allegations of discrete instances in which other individuals were similarly impacted); *Jones v. Va. Polytechnic Inst. and State Univ.*, 2018 WL 4604563, at *6 (W.D. Va. Sept. 25, 2018) (same where the plaintiff failed to allege statistical data or a series of events from which the court could "plausibly infer" that the challenged practice has a discriminatory impact on a certain class).

**B.     Plaintiff's Title VII Disparate Treatment Claims Regarding Conduct Prior to August 20, 2021, *e.g.*, the St. Louis Positions, are Time-Barred**

As Defendants set forth in their opening memorandum, many of Plaintiff's disparate treatment claims were not timely exhausted due to Plaintiff's failure to timely contact the Equal Employment Opportunity Office ("EEO") within 45 days of the underlying challenged action.  *See* Mem. at 18–19 (citing 29 C.F.R. § 1614.105(a)).  There is no dispute that Plaintiff's first EEO contact was, at the very earliest, October 4, 2021.  *See* Mem. at 18; Opp. at 14.  Thus, any discrete actions occurring before August 20, 2021 (*i.e.*, 45 days) are time-barred.

Specifically, Plaintiff alleges disparate treatment under Title VII based on his religion when he was not selected for two Springfield, Va. NGA positions on September 28, 2021.  Dkt. 21 ¶ 50. Plaintiff's first EEO contact was only six days later, on October 4, 2021.  *See* Mem. at 18; Opp. at 14.  Accordingly, Defendants have not moved to dismiss this claim for disparate *treatment* under Title VII.  However, Plaintiff also alleges that beginning in *June 2021*, his requests for religious accommodation for two NGA positions in St. Louis, Mo., were denied.  Compl. ¶ 10–11, 39–43. Yet, Plaintiff did not reach out to NGA's EEO office until October 4, 2021, well beyond the 45-

day requirement.  Thus, it is these discrete acts relating to the St. Louis positions that Defendants move to dismiss for failure to timely exhaust under the 45-day rule.

In his Opposition, Plaintiff claims the 45-day rule is inapplicable because of two exceptions under 29 C.F.R. § 1614.105(a)(2), which states in relevant part:

> The agency . . . shall extend the 45-day time limit . . . when . . . the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, . . . [or] . . . that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits . . . .

Neither exception applies here, however, and thus Plaintiff's arguments fail.

*First*, Plaintiff fails to carry his burden that he lacked constructive notice of the 45-day rule, as required to qualify for the exception under 29 C.F.R. § 1614.105(a)(2).  *See, e.g.*, *Cooley v. Goss*, 430 F. Supp. 2d 544, 548, 551 (E.D. Va. 2005) (Brinkema, J.) (holding that where an unsuccessful job applicant "possessed at least constructive notice of the procedure for filing a discrimination claim" she did not qualify for a waiver, and "the burden of proving a lack of such notice lies with the complainant").  Plaintiff explains, again for the first time in his Opposition, that he lacked *actual* awareness of the 45-day rule.  Opp. at 19.

But nowhere does he address whether he lacked *constructive* notice.  Indeed, Plaintiff's own allegations in the Second Amended Complaint indicate that he had such notice.  Plaintiff alleges that he first reached out to NGA's EEO Office on October 4—*six days* after his September 28 non-selections for the Springfield, Va. positions.  Dkt. 21, ¶¶ 50–52.  Plaintiff's own conduct thus demonstrates that, less than one week after learning of his non-selections, he was aware of how to contact NGA's EEO Office.  Plaintiff goes on to allege that shortly thereafter he sent a written complaint to NGA chronicling the "events leading up to initiating the complaint process, examples of how his religious beliefs were accommodated in the past, and examples of how other

6

government employers have accommodated requests for alternative scheduling based on an applicant's/employee's religious beliefs." *Id.* ¶ 53.  Thus, Plaintiff's own allegations of his "employment history and demonstrated knowledge of the channels through which [he] could assert [his] rights," should lead the Court to conclude "that plaintiff possessed at least constructive notice of the procedure for filing a discrimination claim and therefore does not qualify for a waiver under the regulations." *Cooley*, 430 F. Supp. 2d at 551.

*Second*, and in the alternative, Plaintiff claims that the exception under 29 C.F.R. § 1614.105(a)(2) for "circumstances beyond his control" applies here because he called NGA's EEO Office on October 4 and 8, 2021, shortly after he learned he was not selected for the Springfield positions on September 28, 2021, but NGA did not return those two phone calls.  Opp. at 14–15.  This is a red herring.  As explained in Defendants' opening memorandum and *supra*, Defendants assume that Plaintiff's first EEO contact was the October 4 phone call, and do not argue that Plaintiff's EEO contact is untimely as to the September 28, 2021 non-selections.  *See* Mem. at 18–19.  Rather, what is at issue here—and what Plaintiff fails to address anywhere in his Opposition or Second Amended Complaint—is that there is no allegation that Plaintiff was in some way prevented from reaching out to NGA's EEO *before* October 4.  *See* Mem. at 19.  Instead, Plaintiff states only that once he "learned he was not selected [for the Springfield positions] on September 28, 2021," he reached out to NGA's EEO office, Opp. at 14–15; Dkt. 21 ¶ 50.  But Plaintiff never articulates what prevented him from reaching out earlier when his accommodation requests for the St. Louis positions were not granted, or even exactly *when* an adverse event related to the two Missouri positions purportedly took place.  This last point is crucial, because, as noted in Defendants' opening memorandum, *see* Mem. at 19, "[t]he Fourth Circuit has made clear that a complaint cannot survive a motion to dismiss if it requires a court to 'fill in the gaps' as to the

basis for the alleged discriminatory behavior." *Guillen v. Esper*, 2020 WL 3965007, at *14 (E.D. Va. July 13, 2020) (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020)).

Thus, Plaintiff has failed to properly exhaust his claims regarding any discrete actions that occurred more than 45 days before October 4, 2021, *i.e.*, claims regarding the St. Louis positions, and any such claims should be dismissed.

## C.    Plaintiff's Constitutional Claims are Precluded by Title VII

"Title VII creates the 'exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.'" *Bullock v. Napolitano*, 666 F.3d 281, 283 (4th Cir. 2012) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976)).  This statement of bedrock controlling law is unambiguous and, contrary to Plaintiff's wish, contains no exception for claims of religious discrimination or for employment applicants as opposed to employees.  *See, e.g.*, *Middlebrooks v. Leavitt*, 525 F.3d 341, 349 (4th Cir. 2008) (because "Title VII represents [plaintiff's] exclusive remedy for any claim against the United States for intentional discrimination in employment," a constitutional claim by a federal employment applicant premised on "the same, allegedly discriminatory conduct" as the Title VII claim must be dismissed); *Hall v. Clinton*, 235 F.3d 202, 205–06 (4th Cir. 2000) (Title VII is the exclusive remedy for claims arising out of a "federal employment relationship.") *Somers v. E.E.O.C.*, 2014 WL 1268582, at *7 (D.S.C. Mar. 26, 2014) (dismissing constitutional claims of religious discrimination where the claims rest of the same allegations and theory of liability as Title VII claims).  Accordingly, all of Plaintiff's constitutional claims are subject to dismissal with prejudice.

## D.    Plaintiff's Claims Against Defendants Other than Secretary Austin Must be Dismissed

Plaintiff appears to argue in his opposition that he can assert claims against individual defendants other than Secretary Austin (*e.g.*, various employees of NGA) under both Title VII and

a *Bivens* theory of liability. *See* Dkt. 58 at 27 ("[T]he individuals may indeed have been acting in their official capacities, but nevertheless outside their permitted and required job descriptions."); Dkt. 58 at 26 ("Plaintiff is certainly willing to amend his Complaint in order to make clear that Defendants may have been acting in their individual capacities or in their official capacities, as the evidence may demonstrate."). Plaintiff's arguments are unavailing for several reasons.

First, Plaintiff cannot overcome the fundamental principle that Title VII claims are only properly brought against the head of the agency in question in his or her official capacity. *See* 42 U.S.C. § 2000e-16(c); *King v. Dalton*, 895 F. Supp. 831, 844 (E.D. Va. 1995). And as for Plaintiff's RFRA claim, Plaintiff's proposal that he would be "willing" to amend his complaint "to make clear that Defendants may have been acting in their individual capacities or in their official capacities, as the evidence may demonstrate," Opp. at 26, is a non-starter given that Plaintiff has twice amended the Complaint in this matter, which was originally filed over one year ago on September 1, 2022.[3] Plaintiff appears to argue that his proposed, potential claims against individuals in their personal capacities are necessary to avoid an attempt to "skate away from individual responsibility" for any viable claims. *See* Dkt. 58 at 28. This is, of course, not the case for any surviving claims. It is inarguable that if any of these employees' conduct did violate RFRA or Title VII, the government would be liable.

In sum, as it is well established that any claim against a defendant in his or her official capacity is duplicative of claims against the agency itself, and Plaintiff has had three opportunities

---

[3] "[O]fficers sued in their personal capacity come to court as individuals." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). As such, if Plaintiff wishes to add claims against the individually-named defendants in their individual capacities, then he will need to serve them individually, *see* Fed. R. Civ. P. 4(i)(3), and each individual-capacity defendant will have 60 days within which to respond to the complaint—all of which will delay this litigation even further, despite Plaintiff's prior opportunities to amend.

over the course of a calendar year to refine his allegations, any official-capacity claim against in

individual defendant (other than Secretary Austin) is subject to dismissal with prejudice.[4]

## E.   Retaliation and Hostile Work Environment Claims Should be Dismissed with Prejudice

Plaintiff concedes that his retaliation and hostile work environment claims should be

dismissed.  *See* Opp. at 13.   However, Plaintiff requests these claims be dismissed without

prejudice based at most on what "discovery may provide."  *Id.*   Perhaps unsurprisingly, Plaintiff

offers no legal support for the proposition that failure to state a plausible claim may be remedied

by unidentified evidence in discovery; indeed, the Supreme Court has held to the contrary.  *See*

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions.").   Moreover, Plaintiff offers

no response to Defendant's argument that both of these claims should be dismissed with prejudice

for Plaintiff's failure to exhaust his administrative remedies.  *See* Dkt. 58 at 14, 17 n.6.   Plaintiff

has thus conceded that dismissal of these claims with prejudice is appropriate.  *United Supreme*

*Council v. United Supreme Council of the Ancient Accepted Scottish Rite for 33 Degree of*

*Freemasonry*, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made

in a dispositive pleading results in a concession of that claim.").   Plaintiff should not be permitted

to waste resources in order to engage in a fishing expedition during discovery to uncover claims

---

[4] To the extent Plaintiff were to seek leave to amend his Complaint for a *third time* to pursue *Bivens* liability against any defendant in his or her individual capacity, such a constitutional claim would still arise out of his employment applications with the NGA, and thus necessarily fail for the reasons identified above.  *See, e.g.*, *Lissau v. South. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (Title VII, which applies solely to employers, "foreclose[s] individual liability"); *Stroud v. Winter*, 2009 WL 790100, at *7 (E.D. Va. Mar. 24, 2009).

he has yet to identify and failed to administratively exhaust in multiple years of litigation of this matter.

## V. <u>CONCLUSION</u>

Given the multiple bases on which Plaintiff's claims fail, the Court should dismiss with prejudice Counts Two through Seven of Plaintiff's Second Amended Complaint, in addition to any official-capacity claims against individual defendants other than Secretary Austin, and any disparate treatment claim arising out of events that occurred prior to August 20, 2021.

Dated: September 11, 2023

Respectfully submitted,

JESSICA D. ABER
United States Attorney

*By*: _____/s/_____
ROBERT C. PICKREN
ELIZABETH A. SPAVINS
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3745/85
Fax:    (703) 299-3983
Email:  lizzie.spavins@usdoj.gov
          cooper.pickren@usdoj.gov

*Counsel for Defendants*